The Honorable Karen A. Overstreet
Chapter 11
Hearing Location: 700 Stewart St., Rm. 7206
Hearing Date: January 15, 2010
Hearing Time: 9:30 am.
Response Date: at time of hearing

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re

QL2 SOFTWARE, INC.
316 Occidental Ave, S, Ste. 410
Seattle, WA 98104

Debtor.

Case No. 10-10209

EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL

QL2 Software, Inc., the Debtor and Debtor In Possession herein (the "Debtor" or "QL2"), hereby moves the Court pursuant to 11 U.S.C. § 363(b) and Local Rules 4001-2 and 9013-1(d)(2)(E) for entry of an order authorizing QL2 to use cash collateral of (i) Graham & Dunn[1] and (ii) Kelly Tumelson and Katie Taylor[2]. Graham & Dunn, Kelly Tumelson and Katie Taylor are hereafter referred to as Secured Creditors. This motion is supported by the Declaration of Scott Milburn.

In support of this application, QL2 represents as follows:

- QL2 filed a voluntary petition under Chapter 11 (the "Bankruptcy Case") of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Western District of Washington at Seattle ("Court") on January 11, 2010 (the "Petition Date").

---

[1] Blanket security interest filed under UCC Filing No. 2009-079-3428-0.

[2] Blanket security interest filed under UCC 1 Filing No. 2009-323-2585-5.

EMERGENCY MOTION FOR AUTHORITY TO
USE CASH COLLATERAL - 1
10-10209
#736583 v1 / 40548-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

- QL2 is operating its business and managing its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.
- QL2 is a Washington corporation which provides its customers access to competitive market intelligence data they need through an automated data gathering process.
- QL2 was founded in 2002. It has more than 260 customers in 40 countries, including nine Fortune 50 companies. The QL2 client roster includes more than 100 airlines, three of the top five global pharmaceuticals, and market leaders in retail, consumer products, and life sciences. Its revenue has been increasing steadily - $7.4M in 2007, $11.1M in 2008, and $11.9M in 2009. The company projects 2010 revenue of $16.1M. QL2 employs 167 people, including 43 in Seattle, seven in Atlanta, three in London, and 114 in India.
- QL2 was founded by Kelvin Chin and other individuals. After founding QL2, Chin was sued individually for securities fraud from a prior, unrelated company he founded. The plaintiffs, Tumelson Family Limited Partnership and individual Tumelson family members (hereafter collectively "Tumelson"), obtained a judgment against Chin in 2005.
- It is alleged that Chin then colluded with at least one other QL2 board member to hide his interests in QL2 so Tumelson could not collect on this judgment against any of Chin's equity in QL2 or any of his QL2 income. Chin allegedly sold 750,000 shares of his QL2 stock back to the company, and formally resigned his position and any related wages from QL2.
- Chin continued to be a senior executive with QL2, though he had no formal position or formal salary. On March 25, 2008, QL2 received a letter from Tumelson's counsel threatening a lawsuit against the company if Chin did not pay the outstanding judgment against him. On March 28, 2008, the QL2 board of directors terminated any further relationship of Kelvin Chin with QL2.

EMERGENCY MOTION FOR AUTHORITY TO
USE CASH COLLATERAL - 2
10-10209
#736583 v1 / 40548-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

- Tumelson filed suit against QL2 and Chin on April 21, 2008, alleging fraudulent conveyance regarding Chin's stock and other claims. Four days later the QL2 board engaged KPMG to perform a forensic analysis of the operations of the company under Chin's leadership.

- QL2 hired a new CEO, Russ Aldrich, in August 2008, and since then an entirely new management team has been hired. No one who was in an executive position while Chin was involved with QL2 remains with the company.

- The Tumleson litigation continued throughout 2008 and 2009. QL2 incurred more than $1M in attorneys' and forensic accounting fees related to Chin's alleged malfeasance, the Tumelson lawsuit, and other litigation that arose out of the actions of prior management.

- In August 2009, QL2, the Tumelsons, and a former board member who allegedly was complicit with Chin who was also a named defendant in the suit, engaged in mediation. The parties reached a settlement where QL2 agreed to pay the Tumelsons $730,000 plus interest in a series of payments beginning September 2009, with this obligation to be secured by QL2 accounts receivable.

- The terms of the final settlement agreement continued to be negotiated during September and October as to terms beyond those to which they agreed at the mediation. As a result of the ongoing negotiations, and in light of cash constraints, QL2 did not commence making payments to the Tumelsons and took no steps to give the Tumelsons a security interest.

- The Tumelsons filed a motion with the mediator to hold the mediation settlement agreement enforceable and award an arbitration award (pursuant to that settlement agreement's terms) against QL2. QL2 objected to the motion on the ground that there was no enforceable

EMERGENCY MOTION FOR AUTHORITY TO
USE CASH COLLATERAL - 3
10-10209
#736583 v1 / 40548-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

agreement since the parties were still negotiating final material terms. The arbitrator entered an award in favor of the Tumelsons on October 2, 2009. The King County Superior Court entered a judgment on October 23, 2009, confirming the $730,000 award and other terms of arbitration award against QL2.

- QL2 and Tumelson thereafter negotiated a post-judgment final settlement agreement which is dated **November 16, 2009** under which QL2 was required to (i) provide the judgment creditor with the security interest in its accounts receivable, (ii) issue 750,000 shares of QL2 stock to be held in escrow as additional collateral, and (iii) grant a security interest in QL2's patent as additional collateral. QL2 subsequently fulfilled its obligations under the final settlement agreement as to providing the judgment creditor with the agreed to security. During the course of the negotiations of the final settlement agreement, the Tumelsons garnished a QL2 bank account. That garnishment was released when the final settlement agreement was executed.

- Contemporaneous with the granting of the security interest in the accounts receivable, QL2's prior secured creditor Graham & Dunn PC agreed to subordinate its security interest to Tumelson.

- In November and December 2009, QL2 paid the Tumelsons $250,000 as part of the payment plan under the November 16, 2009, final settlement agreement.

- QL2 has no accrued cash and no bank line of credit. Because of the nature of its business, its cash flow is unsteady, causing challenges in meeting its current obligations. QL2 has received indication from a lender that it will provide it with a line of credit for up to $1,000,000 to be secured with $500,000 of its domestic accounts receivable and $500,000 of

EMERGENCY MOTION FOR AUTHORITY TO
USE CASH COLLATERAL - 4
10-10209
#736583 v1 / 40548-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

its international accounts receivable. That line would greatly ease the challenges faced by QL2 in managing its cash flow and expenses.

- This lender requires a first priority secured position in QL2's accounts receivable and patent. Tumelson refuses to subordinate their security interests in those assets granted to them in November 2009. Accordingly, QL2 cannot obtain the line of credit in the absence of either their agreement to subordinate (which is not forthcoming) or a termination of their security interests. The security interests were granted on antecedent debts within 90 days of QL2's bankruptcy filing, and it is anticipated that QL2 will seek to have these security interests avoided in the near future as part of this bankruptcy filing.

- In the absence of a line of credit, and faced with the scheduled obligations to the Tumelsons and antecedent debt to Graham & Dunn and several other historical, unsecured creditors, it is unlikely that QL2 could survive the next two months without having to terminate all employees and close the business entirely. A prompt reorganization is required in order to maintain the value of the company for the benefit of its creditors, employees and customers.

- QL2 expects to file its remaining schedules in the next few days which will show that there are several equipment lease vendors with security interests on personal property.

- The Secured Creditors are aggregately owed about $1.1M[3]. (Although Sterling Bank filed a UCC financing statement dating back to 2007, this is believed to have been filed in error as the Company has no outstanding debt to Sterling Bank now or since 2007[4].

---

[3] Graham & Dunn debt is approximately $579,000. Kelly Tumelson and Katie Taylor debt is approximately $520,000.

[4] UCC 1 Filing No. 2007-099-6777-4.

EMERGENCY MOTION FOR AUTHORITY TO
USE CASH COLLATERAL - 5
10-10209
#736583 v1 / 40548-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

- QL2 requires the use of the cash collateral of the Secured Creditors, but they will be adequately protected as required under applicable law as the appraised value of the company as recently as November 2008 was approximately $9.6M.

- Assuming that the going concern value of the Company has diminished (even as revenues have increased in significantly in 2009), it is unlikely that its value is less than $1.1M. On the other hand, if the Company ceases to be a going-concern, its value in liquidation is likely to be a small fraction of the 2008 appraised value and could well be inadequate to cover the Secured Creditors' claims.

- If QL2 is forced to cease operations, it will be devastating to its customers, employees and its unsecured creditors.

QL2 requires the use of the Collateral and the cash component and cash equivalent proceeds of the Collateral (the "Cash Collateral") for the maintenance and preservation of QL2's property.

QL2 seeks to use Cash Collateral on an interim basis in accordance with the budget (the "Budget") attached to the Declaration of Scott Milburn as **Exhibit B**. Pursuant to Federal Rule of Bankruptcy Procedure 4001(c)(2), QL2 states that an emergency, preliminary hearing to consider its use of Cash Collateral on an interim basis pending a final hearing on this motion is necessary for the reason that the Cash Collateral will be the primary source of QL2's operating revenues.

QL2 is faced with a number of operating expenses, which it must pay in the ordinary course of its business, including payroll. Without authorization to use Cash Collateral, QL2 will not be able to continue to meet is obligations to employees and vendors, and will be unable to continue to perform on the contracts which it intends to assume, this jeopardizing its chances of success in this Chapter 11 proceeding.

EMERGENCY MOTION FOR AUTHORITY TO
USE CASH COLLATERAL - 6
10-10209
#736583 v1 / 40548-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

QL2 proposes that Secured Creditors be granted security interests and liens (collectively the "Replacement Liens") in and to the following (collectively the "Postpetition Collateral"): (a) all proceeds from the disposition of all or any portion of the Prepetition Collateral, (b) all of QL2's property its estate of the same kind, type and nature as the Prepetition Collateral that is acquired after the Petition Date, and (c) all proceeds of the foregoing. If and to the extent the adequate protection of the interests of Secured Creditors in the Prepetition Collateral granted to QL2 proves insufficient, Secured Creditors will be entitled to a claim under 11 U.S.C. § 507(b) in the amount of any such insufficiency.

The security interests and liens granted herein are hereinafter referred to as the "Postpetition Security Interests." The Postpetition Security Interests shall be (i) senior in rank, priority and right of payment to all other liens on the (1) all QL2's inventory, accounts, equipment, and general intangibles; and (2) all Postpetition Collateral (however, since Secured Creditors currently have liens on these assets, the grant of first-position priority does not prime liens held by other parties).

*Notwithstanding the foregoing, it is QL2's present intention to seek avoidance of the security interests of Kelly Tumelson and Katie Taylor, as well as payments made to them during the 90 days preceding the petition date and nothing in this motion or any subsequent order granting the use of cash collateral shall be evidence of or waiver of any rights QL2 may have to avoid any preferential transfers to Kelly Tumelson and Katie Taylor. However, until such transfers are avoided, QL2 is willing to make such accommodations as are necessary to use cash collateral for its ongoing operations.*

QL2 is presently unable to obtain unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense to cover its operating expenses.

EMERGENCY MOTION FOR AUTHORITY TO
USE CASH COLLATERAL - 7
10-10209
#736583 v1 / 40548-001

*Law Offices*
**KARR TUTTLE CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

A preliminary hearing on this motion is required in order to avoid immediate and irreparable harm to the estate. QL2 has immediate cash needs with regard to payroll, employee benefits, lease payments, and other daily operational expenses, which must be paid pending a final hearing.

QL2 prays that the Court enter an order authorizing it to use cash collateral in the form submitted herewith.

DATED this 12th day of January 2010.

KARR TUTTLE CAMPBELL

/S/ DIANA K. CAREY

---

Diana K. Carey, WSBA #16239
George S. Treperinas, WSBA #15434
Attorneys for Debtor-in-Possession,
QL2 Software, Inc.

EMERGENCY MOTION FOR AUTHORITY TO
USE CASH COLLATERAL - 8
10-10209
#736583 v1 / 40548-001

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100