1 | Lawrence R. Ream, WSBA #18159
2 | Charles A. Lyman, WSBA #30495
  | BULLIVANT HOUSER BAILEY PC
  | 1601 Fifth Avenue, Suite 2300
3 | Seattle, Washington 98101-1618
  | Telephone: 206.292.8930
4 | Facsimile: 206.386.5130

Hon. Karen A. Overstreet
Chapter: 11
Location: Seattle, Courtroom 7206
Hearing Date: April 27, 2010
Hearing Time: 9:30 a.m.
Response Date: At the Hearing

5 | Attorneys for Official Committee of
6 | Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

In re:

QL2 SOFTWARE, INC.,

    Debtor.

No.: 10-10209

AMENDED OVERBID PROCEDURES
ORDER: (A) AUTHORIZING AND
SCHEDULING AN AUCTION AND
HEARING TO APPROVE THE SALE OF
SUBSTANTIALLY ALL OF THE
ASSETS OF THE DEBTOR FREE AND
CLEAR OF LIENS; (B) APPROVING THE
OVERBID PROCEDURES FOR SUCH
SALE; (C) APPROVING TOPPING FEE
AND EXPENSE REIMBURSEMENT; (D)
APPROVING THE FORM AND SCOPE
OF NOTICE OF THE OVERBID
PROCEDURES AND AUCTION

Upon consideration of the motion ("Sale Motion")' of QL2 Software, Inc. ("QL2" or

"Debtor"), pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P. 2002, and 6004, and Local

Bankruptcy Rules 2002-1 and 9013-1 for entry of an order authorizing QL2 to sell

substantially all of its Purchased Assets, free and clear of liens, to DMEP Corporation d/b/a/

Hale Global or its designee, assignee or nominee ("Hale" or "Purchaser") and for approval of

bidding and other related procedures (the "Overbid Procedures Order"); and the Court having

determined that the relief provided herein is in the best interest of the Debtor, its estate, its

creditors and other parties-in-interest; and due and adequate notice of the Sale Motion having

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

been given; and upon the record of the hearing on the Sale Motion, and the full record of this case; and after due deliberation thereon; and good and sufficient cause appearing therefore,[1]

THE COURT HEREBY FINDS THAT:[2]

A.     This Court has jurisdiction over the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief requested in the Overbid Procedures Motion are (i) sections 105(a), 363, 503 and 507 of the Bankruptcy Code, (ii) Rules 2002, 6004, 9007 and 9014 of the Bankruptcy Rules, and (iii) Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the Western District of Washington (the "Local Rules").

C.     Notice of the Sale Motion, having been provided to the parties listed on the Certificate of Service is sufficient in light of the circumstances and nature of the relief requested in the Sale Motion as it relates to overbid procedures, and no other or further notice is required except as set forth herein with respect to the Overbid Procedures, Auction and Sale Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.     The Debtor has articulated good and sufficient reasons for this Court to partially grant the relief requested in the Sale Motion regarding the sale process, including without limitation, (i) partial approval of the Overbid Procedures, the Expense

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**Bullivant|Houser|Bailey PC**
1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

Reimbursement, and the Topping Fee, (ii) the scheduling of the Overbid Deadline, Auction and Sale Hearing for the sale of the Purchased Assets; (iii) approval and authorization to serve the Sale Notice.

E.    The Expense Reimbursement and the Topping Fee were material inducements to the Purchaser to submit the bid that will serve as a minimum or floor bid on which the Debtor, creditors, parties in interest and other bidders may rely.  The Purchaser has provided a material benefit to the Debtor, its estate and its creditors by increasing the likelihood that the best possible price for the Purchased Assets will be received by the Debtor.  Accordingly, the Overbid Procedures, the Expense Reimbursement, and the Topping Fee as permitted by this Order, are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtor, its estate and creditors.

F.    The Debtor has demonstrated that the Expense Reimbursement and the Topping Fee as permitted by this Order are actual and necessary costs and expenses of preserving the Debtor's estate, within the meaning of section 503(b) of the Bankruptcy Code, and of substantial benefit to the Debtor's estate by inducing the Purchaser's bid, which has established a bid minimum for other bidders for the Purchased Assets, thereby ensuring that during the Auction, the Debtor's estate receives the highest or best bid possible for the Purchased Assets .

G.    The Sale Notice, including the attached Bid Procedures, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, Sale and Sale Hearing.

H.    The entry of this Overbid Procedures Order is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest.

IT IS HEREBY ORDERED, JUDGED AND DECREED THAT:

1.    The Sale Motion as it relates to the overbid procedures is PARTIALLY GRANTED as set forth in this Order.

Bullivant|Houser|Bailey PC

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

2.      All objections, if any to the Sale Motion or the relief provided herein, as it relates to the sales procedures, that have not been withdrawn, waived, or settled, as announced to the Court at, or prior to, the hearing on the sale procedures or any adjournment thereof or set forth in a stipulation presented to the Court, and all reservations of rights included therein, are hereby granted in part and overruled in part.

3.      The Overbid Procedures, in the form annexed hereto as Schedule 1, are APPROVED and the terms thereof are incorporated herein as if fully set forth herein and shall apply with respect to the proposed sale of the Purchased Assets.  The Debtor, the Committee and other parties in interest are authorized to take all actions necessary or appropriate to implement the Overbid Procedures.

4.      As further described in the Overbid Procedures, the deadline for submitting bids for the Purchased Assets is May 26, 2010, at 5:00 p.m. (prevailing Pacific Time) (the "Bid Deadline").

5.      Pursuant to Bankruptcy Rule 6004(f)(1), the Debtor is authorized to conduct an Auction with respect to the Purchased Assets pursuant to the terms and conditions set forth herein.  If Qualified Competing Bids are received by the Debtor in accordance with the Overbid Procedures, the Auction shall take place in-person on June 2, 2010 at 10:30 a.m.. (prevailing Pacific Time), to be conducted by the offices of Karr Tuttle Campbell, 1201 Third Avenue, Ste.  2900, Seattle Washington, 98101, or such other location and time as designated by the Debtor, after consultation with the Creditors Committee, in a notice to all Qualified Competing Bidders and the Creditors Committee.  If, however, no Qualified Competing Bid is received (other than the bid contained in the APA), the Auction will not be held and the Debtor shall immediately seek Bankruptcy Court approval of the sale to the Purchaser pursuant to the APA.

6.      The Auction may be adjourned as the Debtor, after consultation with the Committee, deems appropriate.  Reasonable notice of such adjournment and the time and

**Bullivant|Houser|Bailey PC**

1601 Fifth Avenue, Suite 2300
Seattle, Washington  98101-1618
Telephone: 206.292.8930

place for the resumption of the Auction shall be given to the Purchaser, all other Qualified Bidders, the Creditors Committee.

7. The Auction will be conducted in person and only Qualified Bidders and their counsel, counsel and representatives for the Creditors Committee are permitted to attend. The Auction will be transcribed.

8. The Sale Hearing is scheduled to be held on June 7, 2010, at 9:30 a.m. (prevailing Pacific Time) before the Honorable Karen A. Overstreet, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Western District of Washington, 700 Stewart St., Courtroom 7206, Seattle, Washington. The Debtor will seek the entry of an order of this Court at the Sale Hearing approving and authorizing the Sale to the Purchaser or such other party who is the Winning Bidder, on terms and conditions consistent with the APA or Modified APA, as the same may be amended and modified.

9. The form and scope of the Sale Notice attached hereto as Schedule 2 is reasonable and appropriate and is hereby APPROVED and incorporated herein as if fully set forth herein.

10. The Debtor is hereby authorized and directed to serve copies of this Order and the Sale Notice, in substantially the form attached hereto as Schedule 2 upon: (a) the U.S. Trustee, (b) counsel for the Creditors Committee; (c) counsel to the Secured Lenders; (d) counsel to the post-petition lenders; (e) counsel to Hale; (f) parties entitled to receive notice in these Cases pursuant to Bankruptcy Rule 2002; (g) all entities known by the Debtor to have asserted any lien, claim, interest, or encumbrance in or on the Purchased Assets, (h) the Internal Revenue Service and all state/local taxing authorities; and (i) all persons who have expressed an interest in acquiring one or more of the Purchased Assets. Such service shall be made no later than three (3) days after entry of this Order, by first class mail, postage prepaid, or other method reasonably calculated to provide notice of the Sale and the Auction.

**Bullivant|Houser|Bailey PC**

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

Such service shall constitute good and sufficient notice of the sale of the Purchased Assets, this Order, the Auction, the Sale Hearing and all proceedings to be held thereon.

11.     A Topping Fee, in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000) and the Expense Reimbursement and the termination provisions of the APA are APPROVED.

12.     The Topping Fee, as provided in this Order, and the Expense Reimbursement constitute allowed superpriority administrative expense claims pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; provided, however, that if (a) there is no sale transaction and (b) the Expense Reimbursement payment is owed, then the priority of such Expense Reimbursement claim shall be subordinate to the super priority administrative claim, if any, granted to the Tumelsons pursuant to the terms of the Court's cash collateral orders.

13.     No person or entity, other than the Purchaser, shall be entitled to any expense reimbursement or Topping Fee, topping, termination or other similar fee or payment.

14.     Any responses or objections to the relief to be considered at the Sale Hearing, including, but not limited to, the Debtor's request to approve the sale of the Purchased Assets must be (a) in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Western District of Washington 700 Stewart St., #6301, Seattle, WA 98101, so as to be received no later than May 28, 2010 (the "Objection Deadline"); and (d) be served upon Debtor's Counsel, Counsel for Hale, and counsel for the Creditors Committee,.

15.     Notwithstanding Bankruptcy Rule 6004(h), 7062 or 9014, if applicable or any other local rule or otherwise, the terms of this Order shall be effective and enforceable immediately upon its entry.

16.     Any conflict between the terms and provisions of this Order and the APA, shall be resolved in favor of this Order.

**Bullivant|Houser|Bailey PC**

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

17.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

DONE IN OPEN COURT this         day of _____, 2010.

_____
STREET

**United States Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

Presented by:

BULLIVANT HOUSER BAILEY PC

By____/s/_____Richard Birinyi_____
      Richard G. Birinyi, WSBA # 9212
      Lawrence R. Ream, WSBA #18159
      Charles A. Lyman, WSBA #30495
      Attorneys for the Committee

Approved as to form, notice of presentation waived:

KARR TUTTLE CAMPBELL

_____/s/ Diana Carey_____
Diana K. Carey, WSBA #16239
Attorneys for Debtor-in-Possession,
QL2 Software, Inc.

PERKINS COIE LLP

_____/s/ Alan Smith_____
Alan D. Smith, WSBA # 24964
Attorneys for Purchaser,
DMEP Corporation d/b/a/ Hale Global

**Bullivant|Houser|Bailey PC**

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

MILLER NASH LLP


_____ /s/ John Knapp _____
John R. Knapp, Jr., WSBA # 29343
Attorneys for Creditors
Katie Taylor, Kelly Tumelson, and the
Tumelson Family Limited Partnership

12525997.2

**Bullivant|Houser|Bailey PC**

1601 Fifth Avenue, Suite 2300
Seattle, Washington 98101-1618
Telephone: 206.292.8930

# SCHEDULE 1 to Overbid Procedures Order

# OVERBID PROCEDURES[1]

QL2 Software, Inc., a Washington corporation ("Seller") filed a voluntary petition for relief on January 11, 2010 (the "Petition Date") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of Washington, Seattle Division (the "Bankruptcy Court") (the "Case").

Seller has entered into a Purchase and Sale Agreement (the "APA") dated April 8, 2010 with DMEP Corporation d/b/a/ Hale Global or its designee, assignee or nominee ("Hale" or "Purchaser"), pursuant to which the Seller contemplates the sale (the "Sale") of substantially all assets related to Seller's business (the "Purchased Assets") and the assumption by the Purchaser of certain liabilities of the Seller (the "Assumed Obligations"), free and clear of all liens, claims, encumbrances and interest, except as otherwise provided for in the APA, pursuant to sections 363 and 365 of the Bankruptcy Code.

The proposed transaction is subject to the approval of the Bankruptcy Court. As contemplated by the APA and as set forth in that certain order dated [April ___, 2010,] (I)(A) authorizing and scheduling an auction (the "Auction") at which the Debtor will solicit higher and better offers in connection with the sale of the Purchased Assets and Assumed Obligations, (B) approving the bidding procedures (the "Overbid Procedures") for such assets, (C) approving the Topping Fee and expense reimbursement and (D) approving the form and scope of notice of the Overbid Procedures (the "Overbid Procedures Order"), the following Bid Procedures shall be the exclusive mechanism governing the Sale.

The Overbid Procedures hereinafter set forth shall govern the bidding and sale process. These procedures are intended to ensure a fair process with procedures approved by the Bankruptcy Court in advance of the Sale Hearing, as defined below. These Overbid Procedures have been incorporated into the Overbid Procedures Order, which shall become a Final Order prior to the Sale Hearing.

## I. "AS IS, WHERE IS"

The sale of the Purchased Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Debtors, its agents, or estates, except, to the extent set forth in the APA or Modified APA (as defined below), as applicable, and the schedules thereto, with respect to the Winning Bidder (as defined below), approved by the Bankruptcy Court.

---

[1] Terms capitalized but not defined herein shall have the meaning ascribed to them in the APA.

## II.    FREE OF ANY AND ALL CLAIMS AND INTERESTS

All of the Debtor's right, title, and interest in and to the Purchased Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims charges, options, and interests including, but not limited to any recoupment, offset, defenses, debts and obligations thereon and there against (collectively, the "Claims and Interests"), such Claims and Interests to attach to the net proceeds of the sale of such Purchased Assets, except to the extent otherwise set forth in the APA or Modified APA, as applicable.

## III.    DESIGNATION OF STALKING HORSE BIDDER.

a.    Seller has designated the bid of Purchaser (the "Stalking Horse Bidder") as the "stalking horse" bid (the "Stalking Horse Bid").  As the Stalking Horse Bidder, Purchaser shall, upon entry of the Overbid Procedures Order, be entitled to the Topping Fee (as defined below), expense reimbursement and other standard stalking horse protections as discussed below.

b.    The obligation of Purchaser to perform under the APA is conditioned on, among other things, the entry of the Overbid Procedures Order by the Bankruptcy Court approving the Overbid Procedures, the Topping Fee and expense reimbursement.

## IV.    SELLER'S DUE DILIGENCE PACKAGE

To obtain access to all material non-public information that has been or will be delivered to the Purchaser and any other bidder concerning the Purchased Assets and Assumed Obligations, each interested person or entity (other than the Purchaser) must deliver a written request along with a confidentiality agreement either (a) in a form reasonably acceptable to Debtor and Purchaser or (b) in the form attached hereto as Exhibit 1 to (a) Purchaser's attorneys:  Alan D. Smith, Perkins Coie LLP, 1201 3rd Ave., 48th Floor, Seattle, Washington 98101, (Fax: 206-359-9410; email:  ADSmith@perkinscoie.com); and (b) to Seller's attorneys:  Diana K. Carey, Karr Tuttle Campbell, 1201 3rd Ave., #2900, Seattle, Washington 98101, (Fax: (206) 682-7100); e-mail: dcarey@gkarrtuttle.com).  The phrase "material non-public information" includes, without limitation, the exhibits and schedules to the APA, which shall not be filed with the Bankruptcy Court but will be made available to bona fide potential bidders complying with this Section IV.

## V.    AUCTION PROCESS

a.    Auction Date.  The Auction shall be an in-person auction and shall be conducted on June 2, 2010 at 10:30 a.m. PST at the offices of Karr Tuttle Campbell, 1201 Third Ave., Ste. 2900, Seattle, Washington.  To be eligible to participate in the auction, all bidders ("Competing Bidder") must prequalify.

b.  Qualifications to Bid.  Only Competing Bidders who qualify (as described below, the "Qualified Competing Bidders") shall be allowed to participate in the Auction.  Purchaser shall be a Qualified Competing Bidder for all purposes hereunder.

To become a "Qualified Competing Bidder," each Competing Bidder shall, on or before 5:00 p.m. PST on May 26, 2010 ("Bid Deadline"), deliver a proposal ("Competing Proposal") to Diana K. Carey, Karr Tuttle Campbell, 1201 3rd Ave., #2900, Seattle, Washington 98101, (Fax: (206) 682-7100); e-mail: dcarey@karrtuttle.com), counsel for the Seller, and to Alan D. Smith, Perkins Coie LLP, 1201 Third Avenue, #4800, Seattle, Washington 98101 (Fax: (206 359-9410; email ADSmith@perkinscoie.com, counsel for Purchaser; which:

(i) clearly sets forth each component of the bid price, such total price to provide a greater return to unsecured creditors of the Company (or such other stakeholders as the Bankruptcy Court shall deem to be appropriate), taking into consideration the cash and non-cash components of the purchase price plus the necessary overbid amount described in Section V.f. below.  To the extent a Qualified Competing Proposal contains any non-cash consideration, the bidder shall provide a full description of such non-cash components and provide information sufficient for Seller to determine its present cash value.

(ii) shall be set forth in a written agreement containing terms and conditions marked to show the changes from the APA (such written agreement to be deemed a "Modified APA");

(iii) is made by a person financially qualified to consummate the Competing Proposal on a timely basis, and includes such financial and other information that will allow the Seller, after consultation with the Creditors Committee, to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated, including performance under the Assumed Contracts;

(iv) is subject only to entry of an order approving the proposed transaction, with no other contingencies of any sort, including without limitation any environmental, shareholder, financing or due diligence contingencies or conditions, and is made by a person who has completed its due diligence review of Seller's books and records, and is satisfied with the results thereof,

(v) is accompanied by an initial deposit ("Initial Deposit") in the amount of Three Hundred Thousand Dollars ($300,000) to Company, by cashier's check or wire transfer (instructions to be provided upon request) which deposit shall become nonrefundable in the event that such bid is determined to be the "High Bid" as defined below;

(vi) acknowledges that the Competing Bidder may not request any Topping Fee, termination fee, expense reimbursement or similar type of payment.

BIDDERS SHOULD BE AWARE THAT ANY QUALIFIED COMPETING BIDDER THAT DOES NOT SUBMIT A QUALIFIED COMPETING PROPOSAL BY THE BID DEADLINE; WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE BID DEADLINE EITHER BEFORE, DURING OR AFTER THE AUCTION.

    c.     <u>Qualified Competing Bidders</u>. The Debtor, after consultation with the Creditors Committee, shall make a determination regarding whether a bid is a Qualified Competing Proposal and shall notify potential bidders whether their Competing Proposals have been determined to be Qualified Competing Proposals by no later than 12:00 p.m. (prevailing Pacific time) on May 28, 2010, and will provide further bid instructions at that time. The Purchaser is deemed a Qualified Competing Bidder and the APA constitutes a Qualified Competing Proposal for all purposes. The Debtor, after consultation with the Creditors Committee, reserves the right to reject any bid (even if such bid constitutes a Qualified Competing Proposal) if the Debtor determines that such Competing Proposal is inadequate or insufficient or the Debtor determines that such bid is not in conformity with the requirements of the Bankruptcy Code or any related rules, the terms set forth in the Overbid Procedures or contrary to the best interests of the Debtor and its estate. Any party may seek the Court's review of the Debtor's determination that a potential bidder is not a Qualified Competing Bidder; *provided, however*, that any such challenge must be raised and concluded prior to the commencement of the Auction. The Debtor's determination of the Qualified Competing Bidders shall become irrevocable and unreviewable once the Auction has commenced.

    d.     <u>No Qualified Competing Proposals</u>. If no conforming Qualified Competing Proposals are received, the Debtor shall not hold an Auction and, instead, the Purchaser shall automatically be deemed the Winning Bidder and the Seller shall request at the Sale Hearing that the Court approve the APA with the Purchaser.

    e.     <u>Opening, Bid</u>. The Stalking Horse Bid shall be considered the opening bid (the "<u>Opening Bid</u>") at the auction.

    f.     <u>Overbid</u>. The highest Overbid submitted by a Qualified Competing Bidder shall be the initial overbid at the Auction (the "<u>Initial Qualified Competing Proposal</u>"), which shall be at least Two Hundred Fifty Thousand Dollars ($250,000) higher than the Opening Bid. Subsequent overbids (the "<u>Subsequent Overbids</u>") shall be in increments of not less than $100,000 higher than the immediately preceding bid. The Initial Overbid and

Subsequent Overbids shall be on substantially the same or better terms and conditions, taking into consideration the cash and non-cash components of the purchase price as a whole, as those set forth in the Stalking Horse Bid. The Debtor, after consultation with the Creditors Committee shall make a determination of the Highest and Best Bid at the conclusion of each round of bidding.

g.    During each round and at the conclusion of the bidding, for the purpose of evaluating which bid is the highest and best bid, the value of a bid shall be determined by the Debtor, in consultation with the Creditors Committee, after considering all relevant factors, including the following: (i) the net consideration payable to the Debtor; (ii) the liabilities to be assumed under the bid; (iii) the commitments regarding future employment of employees under the bid; (iv) the cash and non cash components of the price payable under the bid; and (v) the probability of the bidder closing the transaction. At the conclusion of each round and at the conclusion of the bidding, the Debtor, in consultation with the Committees, shall announce its determination as to the bidder submitting the highest and best bid. In the event there is a disagreement with the Debtor's determination of the highest and best bid, any such dispute will be resolved by the Court.

h.    <u>Winning Bidder</u>: During the Auction, the person who ultimately submits the highest bid will be deemed the Winning Bidder ("<u>Winning Bidder</u>"). This will be deemed the "<u>High Bid</u>."

h.    The High Bid, as determined by Debtor, after consultation with the Creditors Committee, in accordance with these Bid Procedures, shall promptly be submitted to the Bankruptcy Court for approval at the Sale Hearing. By participating in the Auction, each bidder agrees that if it is the next highest bidder, its bid will remain open for five (5) business days after entry of an order by the Bankruptcy Court approving the sale to the Winning Bidder in order to consummate the sale of Purchased Assets if for any reason the sale to the party submitting the High Bid does not close.

i.    <u>Closing</u>. Unless otherwise extended by Court order, the transaction evidenced by the High Bid shall close within three days after entry of the Sale Order, unless such order is stayed (the "<u>Closing Date</u>") at which time the Winning Bidder shall pay the balance of the High Bid.

j.    <u>Failure to Perform</u>. In the event a bidder is declared to be the Winning Bidder and such bidder fails to timely perform any of its obligations as set forth above or in its Modified APA, such declared Winning Bidder shall forfeit its Initial Deposit without regard to Seller's ultimate damages occasioned by such failure; and this shall not constitute liquidated damages; and, notwithstanding the foregoing, Seller and the bankruptcy estate shall retain all rights, remedies,

claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief.

k.    <u>Remedies if No Sale</u>.  In the event Seller is unable to obtain Court approval of the Sale Motion, the sole remedy of any bidder shall be of the return of its Initial Deposit except, with respect to Purchaser, as otherwise provided in the APA, as modified by the Overbid Procedures Order.

## VI.    TOPPING FEE AND EXPENSES

If this Agreement is terminated because Purchaser's bid is not the High Bid, but Seller consummates a transaction with the Winning Bidder, then Purchaser shall be delivered a topping fee equal to One Hundred Twenty Five Thousand dollars ($125,000) ("<u>Topping Fee</u>") which amount shall be paid within five (5) days of the date the sale to the Winning Bidder is approved by the Bankruptcy Court, and shall be paid solely from the purchase price paid by the Winning Bidder as part of such successful bidder's Qualifying Competing Proposal.  In the event Purchaser purchases the Assets, Purchaser shall not be entitled to a topping fee under this provision.  Purchaser shall also be reimbursed its expenses up to the amount of One Hundred Thousand Dollars ($100,000).  Any Topping Fee or expense reimbursement that becomes payable shall constitute a superpriority claim with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code; provided, however, that if the expense reimbursement payment is owed, then the priority of such expense reimbursement claim shall be subordinate to the super priority administrative claim, if any, granted to the Tumelsons pursuant to the terms of the Court's cash collateral orders..

## VII.    THE SALE HEARING

The Winning Bid (or the APA, if no Qualified Competing Proposal other than that of the Purchaser is received or accepted) will be subject to approval by the Court.  The Sale Hearing will take place on June 7, 2010 at 9:30 a.m. (prevailing Pacific Time) before the Honorable Karen A. Overstreet, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Western District of Washington 700 Stewart St., Courtroom 7206, Seattle, Washington.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

# QL2 MUTUAL NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement is made as of the _____ day of, 20___, between ___
_____ acting on behalf of itself and its Affiliates, whose address is _____
_____ (collectively, "You"), and QL2 Software, Inc., a Washington State
corporation acting on behalf of itself and its Affiliates, whose address for purposes of this
Agreement is: 316 Occidental Ave. S, Suite 410, Seattle, WA 98104 (collectively, "QL2",
"the Company", "we," "our" or "us").

In connection with your possible interest in the purchase of, or other business
relationship with, QL2, you have requested that we furnish you with certain information
relating to QL2 or the proposed purchase or other business relationship (the "Transaction").

All information relating to the Company or the Transaction furnished (whether before
or after the date hereof and whether in writing, orally, visually, electronically or by any other
means) by us, or our respective Representatives to you or your Representatives or your
potential sources of financing for the Transaction, and all analyses, compilations, forecasts,
studies or other documents prepared by you or your Representatives in connection with your
or their evaluation and review of, or your interest in, the Company or the Transaction is
hereinafter referred to as the "Information." The term Information will not, however, include
information that (i) is or becomes generally available to the public other than as a result of a
disclosure by you or your Representatives, or (ii) is or becomes available to you on a non-
confidential basis from a source (other than us, or our respective Representatives) who or
which is not prohibited from disclosing such information to you by any legal, contractual or
fiduciary obligation to us. For purposes hereof, the term "Representatives" means, with
respect to any specified person or entity, such person's or entity's directors, officers,
partners, managers, employees, stockholders, members, affiliates, agents and representatives
(including, without limitation, financial advisors, attorneys and accountants).

Accordingly, you hereby agree that:

i.      You and your Representatives will not use any of the Information for any
purpose other than the exclusive purpose of evaluating the possibility of a Transaction.
Furthermore, you agree only to disclose the Information to your Representatives who need to
know such Information for the purpose of evaluating a possible Transaction (it being
understood that, prior to any disclosure, such Representatives (a) shall be informed by you of
the confidential nature of the Information and directed by you to treat such information
confidentially in accordance with the provisions of this Agreement, and (b) shall agree to act
in accordance with the terms of this letter agreement). You will cause your Representatives
to observe the terms of this letter agreement, and you will be responsible for any breach of
this letter agreement by any of your Representatives. For purposes of this Agreement, an
"Affiliate" shall mean an entity controlled by, controlling or under common control with
QL2 or you as applicable, but only so long as such control exists. The cessation of such

control shall not release an Affiliate of its obligation to comply with the terms and conditions of this Agreement for the period of time stated herein.

2.      Except as expressly permitted by paragraph 1 above, required by order of the U.S.  Bankruptcy Court (to the extent it has jurisdiction over us and/or the Transaction) or as otherwise required by applicable law, regulation or legal process, and only after compliance with paragraph 3 below, you and your Representatives will keep the Information confidential and will not, without our prior written consent, disclose, publish, divulge, furnish or make accessible to anyone, (a) any Information in any manner whatsoever, (b) the fact that the Information exists or has been made available, (c) that you are considering the Transaction, (d) the existence of this letter agreement or the terms hereof, (e) that discussions or negotiations are taking or have taken place concerning the Transaction or involving the Company, or (f) any term, condition or other fact relating to the Transaction or such discussions or negotiations, including, without limitation, the status thereof.

3.      In the event that you or any of your Representatives are requested pursuant to, or required by, applicable law, regulation or legal process (including, but not limited to, by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any of the Information, or any other information protected under Section 2 above, you will notify us promptly so that we may seek a protective order or other appropriate remedy or, in our sole discretion, waive compliance with the terms of this letter agreement.  In the event that no such protective order or other remedy is obtained, or that we waive compliance with the terms of this letter agreement, you will furnish only that portion of the Information or any other information protected under Section 2 above which you are advised by written opinion of counsel is legally required to be disclosed and will exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information or any other information.

4.      If you determine not to proceed with the Transaction, you will promptly inform QL2 of that decision and, in that case, and at any time upon our request or the request of any of our Representatives, you will promptly (a) deliver to the Company at your own expense all copies of the written Information in your or your Representatives' possession, (b) destroy all analyses, compilations, summaries, studies and other material prepared by you or your Representatives and based in whole or in part on, or otherwise containing or reflecting any of, the Information, and (c) confirm such destruction to us in writing.  Any oral Information will continue to be subject to the terms of this letter agreement.  You shall be responsible for assuring that your Representatives comply with the provisions of this paragraph.

5.      You acknowledge that neither we nor any of our respective Representatives or controlling persons within the meaning of Section 20 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), makes any express or implied representation or warranty as to the accuracy or completeness of the Information, and you agree that no such person will have any liability relating to the Information or for any errors therein or

omissions therefrom. You further agree that you are not entitled to rely on the accuracy or completeness of the Information and that you will be entitled to rely solely on such representations and warranties as may be included in any definitive agreement with respect to the Transaction, subject to such limitations and restrictions as may be contained therein.

6. You agree that, for a period of five (5) years from the date of this letter agreement, you will not, directly or indirectly, reveal the name of, solicit, persuade, interfere with or endeavor to entice away from us any of our employees, customers or suppliers, or employ or offer to employ any of our employees with whom you have had contact or who became known to you in connection with your consideration of the Transaction, provided that you will not be restricted in any general solicitation of employees or public advertising of employment opportunities not specifically directed at any such persons, and provided further that you will not be restricted in hiring any such person who responds to any such general solicitation or public advertising.

7. You agree that all (a) communications regarding the Transaction, (b) requests for additional information, facility tours or management meetings, and (c) discussions or questions regarding procedures with respect to the Transaction, will be submitted or directed to Brian Vincent, or his designee. Accordingly, you agree not to initiate or maintain contact with any of our Representatives, suppliers, distributors, brokers or customers concerning our operations, assets, prospects or finances or concerning the Transaction without the express written consent of Brian Vincent, or his designee. You acknowledge and agree that (i) we and our Representatives are free to conduct the process leading up to a possible Transaction as we and our Representatives, in our sole discretion, determine (including, without limitation, by negotiating with any prospective buyer or other prospective party to the Transaction, and entering into a preliminary or definitive agreement without prior notice to you or any other person), (ii) we reserve the right, in our sole discretion, to change the procedures relating to our consideration of the Transaction at any time without prior notice to you or any other person, to reject any and all proposals made by you or any of your Representatives with regard to the Transaction, and to terminate discussions and negotiations with you at any time and for any reason, and (iii) unless and until a written definitive agreement concerning the Transaction has been executed and all relevant judicial approvals obtained, neither we nor any of our Representatives will have any liability to you with respect to the Transaction, whether by virtue of this letter agreement, any other written or oral expression with respect to the Transaction or otherwise.

8. In consideration of the furnishing of Information hereunder and the commencement in good faith of discussions and negotiations with respect to the proposed Transaction, you agree that, for a period of five (5) years from the date of this letter agreement, without the prior written consent of the Board of Directors of the Company, neither you your Representatives nor any of your or their Affiliates will (i) purchase, offer or agree to purchase, or announce an intention to purchase, directly or indirectly, any securities, debt, or assets of the Company (other than a purchase of assets in the ordinary course of business); (ii) make, or in any way participate, directly or indirectly, in any "solicitation" of "proxies" to vote or "consents" (as such terms are used in the rules and regulations of the

Securities and Exchange Commission) or seek to advise or influence any person with respect to the voting of or giving of consents with respect to any voting securities of the Company; (iii) initiate or support, directly or indirectly, any stockholder proposal with respect to the Company; (iv) seek or propose to influence or control the Company's management or policies; or (v) seek to negotiate or influence the terms and conditions of employment of employees of the Company or any agreement of collective bargaining with employees of the Company.

9.      You agree that no failure or delay by us in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.  You also understand and agree that your breach of this agreement will result in irreparable harm to the Company, that remedies at law will be inadequate to protect us against any actual or threatened breach of this letter agreement by you or by your Representatives, and, without prejudice to any other rights and remedies otherwise available to us, you agree to the granting of specific performance and injunctive relief in our favor without proof of actual damages.  You further agree that such remedies shall not be deemed to be the exclusive remedies for any such breach of this letter agreement, but shall be in addition to all other remedies available at law or equity to us.  In addition, you agree to indemnify and hold the Company harmless from and against any and all damages, claims, fees and liabilities of any nature whatsoever, including attorneys' fees, which may result from the breach of this letter agreement by you or any of your Representatives.  In the event of litigation relating to this letter agreement, if a court of competent jurisdiction determines in a final, non-appealable order that this letter agreement has been breached by you or by your Representatives, then you will reimburse us for our costs and expenses (including, without limitation, reasonable legal fees and expenses) incurred in connection with all such litigation.

10.      This letter agreement shall be governed by and construed in accordance with the laws of the State of Washington, without regard to principles of conflicts of laws. Furthermore, the parties agree that the United States Bankruptcy Court, District of Washington, to the extent it has jurisdiction over us and/or the Transaction, and to the extent it does not, King County Superior Court in the State of Washington, constitute the exclusive forums for resolution of any dispute hereunder; and that they will each submit to the personal jurisdiction of such courts with respect to any such dispute, and that any such courts are a convenient forum therefore.

11.      This letter agreement contains the entire agreement between you and us concerning the confidentiality of the Information, and no modifications of this letter agreement or waiver of the terms and conditions hereof will be binding upon you or us, unless approved in writing by each of you and us.  In the event any court shall determine that any provision of this letter agreement is invalid, such determination shall not affect the validity of any other provisions of this letter agreement, which shall remain in full force and effect. You represent that you are acting on your own behalf and not as an agent for another party.  This letter agreement shall be binding on, and shall enure to the benefit of the parties

hereto and their respective successors and permitted assigns; provided, that, (a) any assignment of this agreement by you without the Company's prior consent will be void, and (b) the Company shall have the right to assign all of its rights, powers and privileges under this letter agreement (including, without limitation, the right to enforce this letter agreement) to any party who enters into a transaction with the Company similar to the Transaction. You recognize and agree that nothing contained in this Agreement will be construed as granting any rights to you, by license or otherwise, to any of the Information except as specified in this Agreement. Additionally, this Agreement imposes no obligations on either party to purchase, sell, license, transfer or otherwise dispose of any technology, services or products. Nothing in this Agreement shall be deemed to grant to either party a license under the other party's copyrights, patents, trade secrets, trademarks or other intellectual property rights.

12. Nothing in this Agreement nor in any discussion undertaken nor disclosures made pursuant to this Agreement shall be deemed a commitment to disclose any information to the other party or to engage in any business relationship, contract or future dealing with the other party. In addition, nothing in this Agreement shall be deemed to limit either party's right to conduct similar discussions or perform similar activities to those undertaken in accordance with this Agreement, unless such discussions or activities are in violation of the terms hereof.

13. No waiver, modification or amendment of any provisions of this Agreement shall be valid unless made in writing, signed by both parties, and specifying with particularity the nature and extent of such a waiver, modification or amendment. Any such waiver, modification or amendment shall, in no event, be construed to be a general waiver, abandonment, modification or amendment of any of the terms, conditions or provisions of this Agreement, but such waiver shall be strictly limited and restricted to the extent and occasion specified in such signed writing.

Please confirm your agreement with the foregoing by signing and returning to the undersigned this letter agreement. This letter agreement may be executed in separate counterparts, each of which together shall constitute a single instrument. Facsimile signatures shall be deemed originals for all purposes hereunder.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized officers or representatives.

_____          QL2 Software, Inc.

By: _____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

Date: _____          Date: _____

[PROPOSED] NOTICE OF:  1) SALE OF SUBSTANTIALLY ALL OF THE
DEBTOR'S ASSETS; 2) AUCTION OF ASSETS; and 3) SALE HEARING

TO:    Clerk of the Court, Creditors and Parties in Interest

Schedule:

| |
|---|
| Deadline to Submit Bids: May 26, 2010, 5:00 p.m. (prevailing Pacific Time) |
| Date and Time of Sale Auction:[2] June 2, 2010 at 10:30 a.m. (prevailing Pacific Time) |
| Seller's Notification to Qualified Bidders: May 28, 2010 by 12:00 noon (prevailing Pacific Time) |
| Place of Auction: Karr Tuttle Campbell, 1201 Third Avenue, Suite 2900, Seattle, WA 98101 |

Sale Hearing:

| | |
|---|---|
| Judge: Karen A. Overstreet | Date: June 7, 2010    Time 9:30 a.m. |
| US Bankruptcy Court, Western Dist. | Response/Objection Deadline: May 28, 2010 |
| 700 Stewart St., Courtroom 7206 | |
| Seattle, WA | |

1.     On January 11, 2010, QL2 Software, Inc., Debtor and Debtor-in-Possession herein ("Debtor" or "Seller"), commenced a voluntary case pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.     In connection therewith, the Debtor and DMEP Corporation d/b/a/ Hale Global or its designee, assignee or nominee ("Hale" or "Purchaser"), have entered into a Purchase and Sale Agreement dated April 8, 2010 (the "APA").  Pursuant to the APA, the Debtor seeks to sell substantially all assets related to Seller's business (the "Purchased Assets"), free and clear or all liens, claims, encumbrances and interest, except as otherwise provided for in the APA, pursuant to section 363 of the Bankruptcy Code, and the assumption by the Purchaser of certain liabilities of the Seller (the "Assumed Obligations").

---

[2] An Auction will ONLY be held if there are Qualified Competing Bidders (as defined in the Overbid Procedures) by a party(s) OTHER than the Purchaser.

3.      On April 27, 2010, the United States Bankruptcy Court for the Western District of Washington approved the Overbid Procedures Order.  The Overbid Procedures Order, establishes, among other things, bid procedures (the "Overbid Procedures"), which govern the manner in which the Purchased Assets are to be sold.

4.      Any party that wishes to take part in this process and bid for the Purchased Assets and Assumed Obligations must submit their Competing Proposal by the Bid Deadline noted on page 1 above, and follow all Overbid Procedures.  If the Debtor receives any Qualified Competing Proposals (as defined in the Overbid Procedures), for the Purchased Assets, an auction (the "<u>Auction</u>") will be scheduled as shown on page 1 of this document. ONLY parties that have submitted a Qualified Competing Proposal by the Bid Deadline, and have been identified by the Seller as a Qualified Competing Bidder, may participate at the Auction.

5.      The Sale Hearing to consider approval of the Sale free and clear of all liens, claims, and encumbrances, to the Purchaser (or other Successful Bidder), will be held as shown on page 1 of this document.

6.      Any Response/Objection to the relief requested at the Sale Hearing, must be: (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Western District of Washington 700 Stewart St., #6301, Seattle, WA 98101 so as to be received by Response/Objection Deadline noted above, and; (d) be served upon:

| | |
|---|---|
| QL2 Software, Inc.<br>c/o Diana K. Carey, Esq.<br>Karr Tuttle Campbell<br>1201 Third Avenue, Ste. 2900<br>Seattle, WA 98104<br>e-mail: dcarey@karrtuttle.com | QL2 Software, Inc.<br>Attn: Brian Vincent<br>316 Occidental Ave. S., Ste. 410<br>Seattle, WA 98 101<br>email: brianvincent@comcast.net |
| QL2 - Creditors Committee<br>Lawrence R. Ream<br>Charles Lyman<br>1601 5th Ave #2400<br>Seattle, WA 98101-1618<br>email: larry.ream@bullivant.com | Charles C. Hale<br>Hale Global<br>145 West 58th Street, Floor 6<br>New York, NY 10019<br>Email: Charles@haleglobal.com |
| Alan D. Smith<br>Perkins Coie LLP<br>1201 Third Avenue, Ste. 4800<br>Seattle, WA 98101<br>email: ADSmith@perkinscoie.com | Thomas A. Buford<br>United States Trustee<br>700 Stewart St Ste 5103<br>Seattle, WA 98101<br>email: Thomas.A.Buford@usdoj.gov |

7.     This Notice is qualified in its entirety by, and subject to, the terms and conditions of the Overbid Procedures Order, which shall control in the event of any conflict, and the Debtor encourages parties-in-interest to review all related documents including the Sale Motion and Overbid Procedures Order in their entirety. Parties interested in receiving more information regarding the Sale of the Purchased Assets and Assumed Obligations and/or copies of any related document, including the APA and/or the Sale Motion may make a written request to:

> QL2 Software, Inc.
> c/o Diana K. Carey, Esq.
> Karr Tuttle Campbell
> 1201 Third Avenue, Ste. 2900
> Seattle, WA 98101
> email: dcareygkarrtuttle.com

8.     Copies of the Motion, the Overbid Procedures Order and this Notice can be found on the Court's website http://www.wawb.uscourts.gov/ and are on file with the Clerk of the Bankruptcy Court, 700 Stewart St., Seattle, WA 98101. All parties interested in

making an offer for the purchase of all or substantially all of the Debtor's assets may do so in accordance with the Overbid Procedures Order.

UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT, AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.

Dated this _____ day of May, 2010.

KARR TUTTLE CAMPBELL


_____
Diana K. Carey, WSBA #16239
Attorneys for Debtor-in-Possession,
QL2 Software, Inc.

12526005.2