Stephanie R. Alexander
MICHAEL & ALEXANDER PLLC
701 Pike Street, Suite 1150
Seattle, WA 98101
Phone: (206) 442-9696

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re | ) |
| | ) No. 10-10209 |
| QL2 SOFTWARE, INC., | ) |
| | ) Adv. Proc. No. |
| Debtor. | ) |
| | ) NOTICE OF REMOVAL |
| _____ | ) |
| | ) |
| SCOTT A. MILBURN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT GENISE, WILLIAM | ) |
| TENNESON, and BRIAN VINCENT, in | ) |
| their representative and individual | ) |
| capacities, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**TO:** The Clerk of Court, United States District Court, Western District of Washington

**AND TO:** Sheryl J. Willert, and Williams Kastner & Gibbs, PLLC, counsel of record for

plaintiff Scott A. Milburn in the Superior Court of Washington for King County, No. 10-2-

14293-2 SEA, *Scott A. Milburn v. Robert Genise, et al.* ("Civil Action").

NOTICE OF REMOVAL - 1
No. 10-10209

**AND TO:** Diana K. Carey, bankruptcy counsel for QL2 Software, Inc.

You are hereby notified of the removal of all claims and causes of action asserted by Scott A. Milburn against Robert Genise, William Tenneson, and Brian Vincent (collectively "Directors") at issue in the Superior Court of Washington for King County, No. 10-2-14293-2 SEA, *Scott A. Milburn v. Robert Genise, et al.*, to the United States Bankruptcy Court for the Western District of Washington at Seattle (the "Bankruptcy Court") by the Directors, pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027.

## I. FACTS ENTITLING THE DIRECTORS TO REMOVE

A. The Civil Action was initiated on or about April 16, 2010, by Scott A. Milburn ("Milburn") against the Directors, alleging failure to pay wages to which he was lawfully entitled pursuant to a contract.

B. QL2 Software, Inc. ("QL2") filed for chapter 11 bankruptcy protection on January 11, 2010, in the United States Bankruptcy Court for the Western District of Washington at Seattle, No. 10-10209; QL2 was and remains a debtor-in-possession. The Directors are all of the Board of Directors of QL2. Mr. Milburn commenced employment by QL2 in October 2008 and his employment was terminated in February 2010 (*i.e.*, post-petition), and the parties purportedly entered into a Separation Agreement and Release.

C. The resolution of the Civil Action will determine the extent to which the plaintiff is entitled to severance in the Debtor's bankruptcy estate. Accordingly, the Civil Action is related to the above-captioned action presently pending in the Bankruptcy Court.

D. The United States District Court for the Western District of Washington at Seattle has jurisdiction over the Civil Action under 28 U.S.C. § 1334 because it is related to the above-captioned action presently pending in the Bankruptcy Court.

NOTICE OF REMOVAL - 2
No. 10-10209

**MICHAEL & ALEXANDER PLLC**
701 Pike Street, Suite 1150
Seattle, WA 98101
(206) 442-9696

Case 10-10209-KAO    Doc 211    Filed 05/10/10    Entered 05/10/10 12:11:06    Page 2 of 30

1   E.    The Civil Action is a civil action other than a proceeding before the Tax Court or

2   a civil action by a governmental unit to enforce the governmental unit's police or regulatory

3   power. The Directors consent to entry of final orders of judgment by the bankruptcy judge.

4   F.    Upon removal of the claims against the Directors in the Civil Action, the

5   proceeding will be a core proceeding under 28 U.S.C. § 157(b)(2)(B) because it concerns the

6   allowance or disallowance of claims from property of the Debtor' bankruptcy estate, plus it

7   affects the administration of the estate, and, in particular, the interpretation of bankruptcy rights

8   including the entitlement to severance pursuant to 11 U.S.C. § 503(c)(2) and obtaining of credit

9   under 11 U.S.C. § 364(d)(1).

## II. PROCESS AND PLEADINGS

A copy of all process and pleadings filed in the Civil Action are attached to this Notice
of Removal.

Dated this 10th day of May, 2010.

MICHAEL & ALEXANDER PLLC

By: _____
Stephanie R. Alexander, WSBA #28007
Thomas P. Holt, WSBA #39722
Attorneys for Defendants Robert Genise, et al.
701 Pike Street, Suite 1150
Seattle, WA 98101
Phone: (206) 442-9696
Fax:    (206) 442-9699
stephanie@michaelandalexander.com
tom@michaelandalexander.com

NOTICE OF REMOVAL - 3
No. 10-10209

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Counsel for the plaintiff, Scott Milburn:

Sheryl J. Willert, WSBA #08617
Williams, Kastner & Kibbs PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Phone: (206) 628-6600
Fax: (206) 628-6611
Email: swillert@williamskastner.com

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants to this adversary case:

Bankruptcy Counsel for QL2, Inc.:

Diana K. Carey, WSBA # 16239
Karr Tuttle Campbell
1201 Third Avenue, Suite 2900
Seattle, WA 98101
Phone: (206) 224-8066
Fax: (206) 682-7100
Email: dcarey@karrtuttle.com

DATED this 10th day of May, 2010.

_Sandra Stepper_
Sandra Stepper

NOTICE OF REMOVAL - 4
No. 10-10209

MICHAEL & ALEXANDER PLLC
701 Pike Street, Suite 1150
Seattle, WA 98101
(206) 442-9696

Case 10-10209-KAO   Doc 211   Filed 05/10/10   Entered 05/10/10 12:11:06   Page 4 of 30

RECEIVED ON 4/21/10
@ QLZ OFFICE.

1

2

3

4

5

6

7  SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8  SCOTT A. MILBURN, an individual,          NO. 10-2-14293-2 SEA

9            Plaintiff,                      SUMMONS (20 Days)

10    v.                                     CR 4 (b)

11  ROBERT GENISE, and WILLIAM               (SM)
    TENNESON and BRIAN VINCENT, in their
12  representative and individual capacities,

13            Defendants.

14

15  TO THE DEFENDANT BRIAN VINCENT:

16        A lawsuit has been started against you in the above entitled court by SCOTT A.
    MILBURN, plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is
17  served upon you with this summons.

18        In order to defend against this lawsuit, you must respond to the complaint by stating
    your defense in writing, and by serving a copy upon the person signing this summons within 20
19  days after the service of this summons, excluding the day of service, or a default judgment may
    be entered against you without notice. A default judgment is one where plaintiff is entitled to
20  what he asks for because you have not responded. If you serve a notice of appearance on the
    undersigned person, you are entitled to notice before a default judgment may be entered.

21        You may demand that the plaintiff file this lawsuit with the court. If you do so, the
22  demand must be in writing and must be served upon the person signing this summons. Within
    14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the
23  service on you of this summons and complaint will be void.

24        If you wish to seek the advice of an attorney in this matter, you should do so promptly
    so that your written response, if any, may be served on time.

25        This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State
    of Washington.

SUMMONS (20 Days) - 1

Williams, Kastner & Gibbs PLLC
888 SW Fifth Avenue, Suite 600
Portland, OR 97204-2025
Telephone: (503) 228-7967 • Fax: (503) 222-7261

2801224.1

DATED this 16th day of April, 2010.

s/Sheryl J. Willert, WSBA #08617
Attorney for Plaintiff Scott A. Milburn
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone: (206) 628-6600
Fax: (206) 628-6611
Email: swillert@williamskastner.com

SUMMONS (20 Days) – 2

2801224.1

Williams, Kastner & Gibbs PLLC
888 SW Fifth Avenue, Suite 600
Portland, OR 97204-2025
Telephone: (503) 228-7967 • Fax (503) 222-7261

SCOTT A. MILBURN, an individual,

        Plaintiff,

    v.

ROBERT GENISE and WILLIAM
TENNESON and BRIAN VINCENT, in their
representative and individual capacities,

        Defendants.

NO. 10-2-14293-2 SEA

COMPLAINT BREACH OF
CONTRACT AND WRONGFUL
WITHHOLDING OF WAGES

## I. INTRODUCTION

1.    Plaintiff brings this action against Defendants for failure to pay wages to which he is lawfully entitled pursuant to a contract. He alleges as follows:

## II. PARTIES

2.    Plaintiff Scott A. Milburn ("Plaintiff") is a resident of King County and was employed by QL2, Inc., a corporation headquartered in King County, Washington, pursuant to a contract dated September 30, 2008.

3.    Brian Vincent ("Vincent") is the interim CEO of QL2 and has decision making authority over payments made pursuant to Plaintiff's contract and Severance Agreement dated February 12, 2010. Vincent is directing delay or failure to make of payments to Plaintiff. On information and belief, Brian Vincent is a resident of King County, Washington.

COMPLAINT BREACH OF CONTRACT AND WRONGFUL
WITHHOLDING OF WAGES - 1

2801471.1

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

4. On information and belief, William Tenneson ("Tenneson") is a member of the Board of Directors and directed and/or is directing the actions of Vincent, Genise and those at QL2 who have responsibility for issuance of payment.

5. On information and belief Robert Genise ("Genise") is a member of the Board of Directors and directed and/or is directing and/or is acquiescing in the actions of Vincent, Tenneson in delaying payments which are due and owing pursuant to the contract signed by the Company.

## III. JURISDICTION AND VENUE

6. QL2, Inc. ("QL2") is a Washington Corporation with its primary place of business in Seattle, Washington. QL2 employed Plaintiff pursuant to a written contractual agreement as its Vice President, Operations and General Counsel commencing on October 1, 2008 in Seattle, Washington. This Court has jurisdiction over the parties pursuant to R.C.W. 2.08.010 because QL2 conducts business in Washington.

7. This court has jurisdiction over Robert Genise, Brian Vincent and William Tenneson, as individuals, because they transact and transacted business on behalf of QL2 in King County, Washington.

8. Venue is proper in this Court pursuant to R.C.W. 4.12.025 because QL2, Robert Genise, Brian Vincent and William Tenneson, as individuals, conducted business in King County, Washington.

## IV. FACTUAL BACKGROUND

9. In September 2008, QL2 hired Scott A. Milburn to act as its Vice President, Operations and General Counsel. Plaintiff commenced his employment on October 2, 2008.

10. Plaintiff continued in the employ of QL2 continuously from October, 2008 through the termination of his employment in February, 2010.

11. At the commencement of his employment, Plaintiff signed an employment contract which provided that in the event of termination he would receive severance as follows:

6. Termination of Agreement.

c. Severance Pay. The Company shall pay VP an amount equal to three (3) months ("Termination Period") of VP's Salary at the

COMPLAINT BREACH OF CONTRACT AND WRONGFUL WITHHOLDING OF WAGES - 2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2801471.1

time of termination, in a single lump sum to be paid within thirty (30) days of the termination date, or on some other schedule agreed to by the VP and the Company. In addition, all accrued shares of the Company's common stock due to the VP will be granted through the end of the Termination Period.

12. In January, 2010, QL2 filed for bankruptcy in the United States Bankruptcy Court as a Debtor in Possession.

13. Plaintiff's employment with QL2 was terminated on February 9, 2010. On February 12, 2010, Plaintiff signed a Separation and Release Agreement with QL2 which was signed by its then CEO, Russ Aldrich. (Attached as Exhibit A.) In that Agreement, QL2 agreed to the following:

2. Payments By Employer

In exchange for Employee's promises and agreements set forth in this Agreement, Employer will pay Employee $8,333.33 per pay period for a three month period. The amount of 2009 unpaid bonuses $4,326.34 will be paid in a lump sum at the end of the severance period. The bonus payment was reported in 2009 income, and taxes and other applicable withholdings have already been withheld for that payment. Unpaid base salary and used vacation time through the end of the pay period will be paid in the course of Employer's regular payroll. The other amounts described in section 2 shall begin on the first pay period after the Effective Date (as defined in Section 15 below). The payment described in this Section 2 will be subject to taxes and other applicable withholding, with the exception of the unpaid bonus amount of $4,261.34.

As further consideration, Employer also agrees to pay health care continuation premiums pursuant to the Consolidated Omnibus Reconciliation Act (COBRA) as amended by the American Recovery and Reinvestment Act of 2009 for a period of six months commencing on March 1, 2010.

14. On March 31, 2010, Russ Aldrich then CEO of the Company informed Plaintiff that the Company had decided to defer payments which were due and owing to him pursuant to his Severance Agreement and Release. On March 31, 2010, Plaintiff wrote to Aldrich and QL2 that such deferments were not acceptable and that action would be commenced if payments were not made. (Attached as Exhibit B.) Plaintiff has been subsequently informed that the Company has no intention of paying any additional severance regardless of the contract that it signed.

COMPLAINT BREACH OF CONTRACT AND WRONGFUL
WITHHOLDING OF WAGES - 3

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2801471.1

15.     Defendants Vincent, Genise, and Tenneson have control over the funds that are due and owing to Plaintiff and have continued to refuse to make such payments.

16.     As of April 16, 2010, Defendants have failed to make payments which are required under the Severance Agreement.

## V.  CLAIMS

17.     Defendants have failed to make payments which were due and owing to Plaintiff pursuant to his employment contract and pursuant to his Separation Agreement and Release.

18.     Defendants' failure to make such payments constitutes a breach of contract.

19.     Defendants' failure to make such payments constitutes a violation of R.C.W. 49.48. et. seq. and R.C.W. 49.52. et. seq.

20.     Consistent with Washington law, Defendants' failure to make such payments is not excused by lack of funds or a desire to defer payments.

21.     Consistent with Washington law, any individual who exercises control over the payment of funds and acts under that authority and fails to make such payments is personally liable for such failure.

22.     Consistent with Washington law the Company's bankruptcy does not excuse failure of payments.

## VI.  DAMAGES

23.     Plaintiff seeks immediate payment of all funds due and owing.

24.     As a result of Defendants' actions, Plaintiff seeks acceleration of all funds due and owing pursuant to the contract of employment dated September 30, 2008.

25.     As a result of Defendants' actions, Plaintiff seeks double damages and attorneys fees as provided for in R.C.W. 49.48. et. seq. and R.C.W. 49.52. et. seq. and any other relief available pursuant to R.C.W. Title 49.

26.     Should the Court not accelerate payment of all funds due, Plaintiff requests that the Court enjoin the Defendants from any further failures to make payments.

27.     As a result of Defendants' actions, Plaintiff seeks whatever other relief the Court deems just and equitable.

COMPLAINT BREACH OF CONTRACT AND WRONGFUL
WITHHOLDING OF WAGES - 4

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2801471.1

1   DATED this 16th day of April, 2010.

2
                                        s/Sheryl J. Willert, WSBA #08617
3                                       Attorney for Plaintiff Scott A. Milburn
                                        WILLIAMS, KASTNER & GIBBS PLLC
4                                       601 Union Street, Suite 4100
                                        Seattle, WA 98101-2380
5                                       Telephone: (206) 628-6600
                                        Fax: (206) 628-6611
6                                       Email: swillert@williamskastner.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT BREACH OF CONTRACT AND WRONGFUL            Williams, Kastner & Gibbs PLLC
WITHHOLDING OF WAGES - 5                             601 Union Street, Suite 4100
                                                    Seattle, Washington 98101-2380
                                                    (206) 628-6600

2801471.1

## SEPARATION AGREEMENT AND RELEASE

THIS SEPARATION AGREEMENT AND RELEASE (the "Agreement") is entered into between Scott Milburn (hereinafter referred to as "Employee") and QL2 Software, Inc., a Washington corporation (hereinafter referred to as "Employer").

## RECITALS

A.     Employee has been employed by Employer, and Employee's employment at Employer will terminate on Tuesday, February 9, 2010 (the "Termination Date").

B.     Employer wishes to offer Employee a separation package setting forth the terms of Employee's separation and any continuing obligations of the parties to one another following the end of the employment relationship.

C.     Each of the undersigned parties to this Agreement has had ample opportunity to review the facts and law relevant to this issue, has consulted fully and freely with competent counsel of its choice if desired, and has entered this Agreement knowingly and intelligently without duress or coercion from any source. Employee has had a reasonable time in which to consider whether Employee wished to sign this Agreement.

## AGREEMENTS

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises contained below, the parties agree as follows:

### 1.     EMPLOYMENT: ENDING DATE

Employee's employment with Employer will end on Tuesday, February 9, 2010.

### 2.     PAYMENTS BY EMPLOYER

In exchange for Employee's promises and agreements set forth in this Agreement, Employer will pay Employee $8,333.33 per pay period for a three month period. The amount of 2009 unpaid bonus $4,261.34 will be paid in a lump sum at the end of the severance period. That bonus payment was reported in 2009 income, and taxes and other applicable withholdings have already been withheld for that payment. Unpaid base salary and unused vacation time through the end of the pay period will be paid in the course of Employer's regular payroll. The other amounts described in this Section 2 shall begin on the first pay period after the Effective Date (as defined in Section 15 below). The payment described in this Section 2 will be subject to taxes and other applicable withholdings, with the exception of the unpaid bonus amount of $4,261.34.

As further consideration, Employer also agrees to pay health care continuation premiums pursuant to the Consolidated Omnibus Reconciliation Act ("COBRA") as amended by the American Recovery and Reinvestment Act of 2009 for a period of six months commencing on March 1, 2010.

**EXHIBIT A**

### 3. STOCK OPTIONS

Employee acknowledges that pursuant to the terms of the stock option granted to Employee to purchase shares of Employer's Common Stock under Employer's 2008 Stock Option Plan (the "Option"), no shares subject to the Option will vest after the Termination Date. All vested options will remain exercisable until the date that is three months from the date of termination, at which point such vested options will expire. A separate letter will be sent with details on exercising options.

### 4. REAFFIRMATION OF PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

Employee expressly reaffirms and incorporates herein as part of this Agreement the Proprietary Information and Inventions Agreement which Employee signed as part of Employee's employment with Employer shall remain in full effect. If Employee breaches Employee's this agreement, all payments still due and owing under Section 2 will be canceled and Employee shall upon demand by Employer immediately return any payments already made pursuant to Section 2.

### 5. GENERAL RELEASE OF CLAIMS

Employee expressly waives any claims against Employer (including, for purposes of this Section 5, all parents, affiliates, subsidiaries, officers, directors, shareholders, managers, Employees, agents, investors, and representatives) and releases Employer (including its parents, affiliates, subsidiaries, officers, directors, shareholders, managers, employees, agents, investors, and representatives) from any claims, whether known or unknown, which existed or may have existed at any time up to the date of this Agreement, including claims related in any way to Employee's employment with Employer or the ending of that relationship. This release includes, but is not limited to, any claims for wages, bonuses, employment benefits, stock options or other equity securities, or damages of any kind whatsoever, arising out of any common law torts, arising out of any contracts, express or implied, any covenant of good faith and fair dealing, express or implied, any theory of wrongful discharge, any theory of negligence, any theory of retaliation, any theory of discrimination or harassment in any form, any legal restriction on Employer's right to terminate employees, or any federal, state, or other governmental statute, executive order, or ordinance, including, without limitation, Title VII of the Civil Rights Act of 1964 as amended, the Civil Rights Act of 1991, the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Family and Medical Leave Act, the Executive Retirement Income Security Act, the Washington Law Against Discrimination, or any other legal limitation on or regulation of the employment relationship. This release does not preclude a claim for indemnification that may arise in the future if Employee is named as a defendant in a legal proceeding in which claims are asserted against Employee based on his role as an officer or employee of Employer. This waiver and release shall not preclude either party from filing a lawsuit for the exclusive purpose of enforcing its rights under this Agreement.

Employee represents that Employee has not filed any complaints, charges or lawsuits against Employer with any governmental agency or any court, and agrees that Employee will not

initiate, assist or encourage any such actions, except as required by law. Employee further agrees that if a commission, agency, or court assumes jurisdiction of such claim, complaint or charge against Employer on behalf of Employee, Employee will request the commission, agency or court to withdraw from the matter.

Employee represents and warrants that Employee is the sole owner of the actual or alleged claims, rights, causes of action, and other matters which are released herein, that the same have not been assigned, transferred, or disposed of in fact, by operation of law, or in any manner, and that Employee has the full right and power to grant, execute and deliver the releases, undertakings, and agreements contained herein.

### 6. NON-DISPARAGEMENT

Each party agrees to refrain from making any derogatory or disparaging comments to the press or any individual or entity regarding the other party, its business or related activities, or the relationship between the parties. Further, Employee will not share any confidential or proprietary information regarding Employer or its business with any individuals or entities.

### 7. RETURN OF PROPERTY

Employee confirms that Employee has or will immediately, upon the Termination Date, return to Employer all files, memoranda, records, credit cards, pagers, computers, computer files, passwords and pass keys, card keys, or related physical or electronic access devices, and any and all other property received from Employer or any of its current or former employees or generated by Employee in the course of employment.

### 8. BREACH OR DEFAULT

Any party's failure to enforce this Agreement in the event of one or more events that violate this Agreement shall not constitute a waiver of any right to enforce this Agreement against subsequent violations.

### 9. SEVERABILITY

The provisions of this Agreement are severable, and if any part of it is found to be unlawful or unenforceable, the other provisions of this Agreement shall remain fully valid and enforceable to the maximum extent consistent with applicable law.

### 10. ENTIRE AGREEMENT

This Agreement sets forth the entire understanding between Employee and Employer and supersedes any prior agreements or understandings, express or implied, pertaining to the terms of Employee's employment with Employer and the employment relationship. Employee acknowledges that in executing this Agreement, Employee does not rely upon any representation or statement by any representative of Employer concerning the subject matter of this Agreement, except as expressly set forth in the text of the Agreement. No modification or waiver of this Agreement will be effective unless evidenced in a writing signed by both parties.

## 11.   GOVERNING LAW

This Agreement will be governed by and construed exclusively in accordance with the laws of the State of Washington without reference to its choice of law principles. Any disputes arising under this Agreement shall be brought in a court of competent jurisdiction in the State of Washington.

## 12.   TAX CONSEQUENCES

Employee has reviewed or has elected not to review with Employee's own tax advisors the federal, state, local and foreign tax consequences of the transactions contemplated by this Agreement.

## 13.   CONFIDENTIALITY

Employee agrees that Employee and Employee's counsel, if any, will maintain in strict confidence the fact and terms of this Agreement. However, Employee may disclose such information (a) to financial and legal advisors who agree to keep the information confidential; (b) to Employee's spouse, if Employee's spouse agrees to keep the information confidential; (c) to the extent necessary to enforce this Agreement; or (d) to the extent required by law.

## 14.   NO ADMISSION OF WRONGDOING

This Agreement shall not be construed as an admission by either party of any wrongful or unlawful act or breach of contract.

## 15.   KNOWING AND VOLUNTARY AGREEMENT

Employee agrees that Employee has carefully read and fully understands all aspects of this Agreement, including the fact that this Agreement releases any claims that Employee might have against the Company except as set forth in this Agreement. Employee agrees that Employee has not relied upon any representations or statements not set forth herein or made by the Company's employees, agents or representatives. Employee agrees that Employee has been advised to consult with an attorney prior to executing the Agreement, and that Employee has either done so or knowingly waived the right to do so, and now enters into this Agreement without duress or coercion from any source. Employee agrees that Employee has been provided the opportunity to consider for forty-five (45) days whether to enter into this Agreement, and has voluntarily chosen to enter into it on this date. Employee may revoke this Agreement (including Employee's resignation from Employee's employment with the Company) for a period of seven (7) days following Employee's execution of this Agreement. The "Effective Date" of this Agreement shall be the first day following the expiration of the seven (7) day period without revocation by Employee.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties have executed this Separation Agreement and Release as of the dates indicated below.

QL2 SOFTWARE, INC.                    EMPLOYEE

By: _____          _____
    Russell Aldrich                    Scott Milburn

Dated: February 12, 2010              Dated: February 12, 2010

68414-0001/LEGAL15037287.2



September 30, 2008

Scott A. Milburn
7480 81st Place SE
Mercer Island, WA 98040

Re: Vice President, Operations Offer Letter ("Agreement")

Dear Scott:

On behalf of QL2, Inc. (the "Company"), we are pleased to offer you the position of Vice President, Operations and General Counsel ("VP") of the Company. For the Directors, as well as the members of the Company's management team, we believe that you have the skill set, work ethic, and passion to be successful in this new role. The terms of your new position with the Company are set forth below.

1. **Position.**

a. You will become a VP of the Company, working out of the Company's headquarters in Seattle, Washington ("Office"). As VP, you will be an officer of the Company and will report to the Company's CEO, Russ Aldrich (the "CEO") and have overall charge of and responsibility for business development, human resources, finance, inside legal counsel, and management of outside legal counsel of the Company.

b. You agree that to the best of your ability and experience you will at all times loyally and conscientiously perform all of the duties and obligations of a VP which are required of you under this letter, and to the reasonable satisfaction of the Company. During your employment, you further agree that you will devote substantially all of your business time and attention (excluding any periods of vacation and medical or sick leave) to the business of the Company. During your employment, the Company will be entitled to all of the benefits and profits arising from or incident to all such work, services and advice, and you will not render commercial or professional services of any nature to any person or organization, whether or not for compensation, without the prior written consent of the Board. During the term of your employment, you will not directly or indirectly engage or participate in any business that is competitive in any manner with the business of the Company.

2. **Start Date.**

a. Subject to fulfillment of any conditions imposed by this letter Agreement, you will commence this new position with the Company as soon as possible, and such date will be referred to as your "Start Date," but it is expected that your Start Date will not be later than October 1, 2008.



  b. **Probationary Period.** You will be subject to a Probationary Period of one hundred eighty (180) days during which the CEO may terminate you without cause. After this period you will become a full-time employee subject to any termination provisions in this letter Agreement.

3.   **Cash Compensation.**

  a.   **Base Salary.** You will be paid a cash salary at a rate of $16,666.67 per month, subject to applicable withholding taxes, which is equivalent to $200,000 on an annualized basis. Your salary will be payable pursuant to the Company's regular payroll policy (or in the same manner as paid to other officers of the Company).

  b.   **Bonus.** Your year-end target performance-based bonus will be twenty-five percent (25%) of your base salary for the achievement of the Company's revenue and cash flow plan. The performance objectives for your cash bonus will be mutually determined by you and the CEO within ninety (90) days of your employment. For calendar year 2008, the bonus will be pro-rated based on the number of days you served as VP during the year. To earn any bonus under this Section, you must be continuously employed by the Company through the end of the applicable calendar year. Any bonus earned under this Section will be paid to you no later than the end of first quarter following the calendar year.

  c.   **Compensation Review.** At the end of each calendar year during your employment, the Board or its Compensation Committee will review your salary and bonus plan.

4.   **Equity Interest.**

  a.   **Grant.** In connection with the commencement of your employment as VP, the Board will grant you an option (the "Option") to purchase shares of the Company's Common Stock (the "Shares") equal to five percent (5.0%) of the total shares outstanding in the Company with an exercise price to be determined by the Company's Board of Directors. The Shares will vest at the rate of 1/48th of the total number of Shares per month. Vesting will, of course, depend on your continued employment with the Company subject to any of provisions set forth herein.

  b.   **Option Basis.** The Option will be an incentive stock option to the maximum extent allowed by the tax code and will be subject to the terms of the Company's Stock Plan (the "Plan").

5.   **Benefits.**

  a.   **Employee Benefits.** You and your eligible family members will be entitled to participate, to the extent you are eligible under the terms and conditions thereof, in any medical insurance plans, 401(k) plans, deferred compensation plans, life insurance plans, vacation, retirement or other employee benefit plans or fringe benefit plans or perquisites which are generally available to the most senior executives of the Company and which may become effective from time to time during your employment with the Company. In light of your role as General Counsel, included in your benefits will be reimbursement of expenses

associated with the maintenance of your membership in the Washington State Bar Association.

      b.   **Indemnification.** The Company currently indemnifies all officers and directors, and you will enter into the Company's standard form of Indemnification Agreement. You shall be covered by all directors and officers insurance policies in place during your employment.

      c.   **Vacation.** You will be entitled to accrue four (4) weeks paid time off per year (including vacation time and sick time off), pro-rated for the remainder of this calendar year. To the extent that the Company allows a longer period for any of its most senior executive officers, you shall be entitled to the longer period.

     6.   **Termination of Agreement.**

      a.   **Termination by Employer Without "Cause," by VP for "Good Reason," or Because of a "Change in Control."** If the Company terminates VP's employment without "Cause," if VP terminates employment for "Good Reason," or if there is a "Change of Control," the Company shall provide VP the following severance benefits, on the condition that VP sign a release of all claims arising out of VP's employment with the Company, in a form acceptable to the Company:

      b.   **Compensation Through Termination.** The Company shall pay VP all Salary, accrued vacation and all reimbursable expenses incurred through the termination date.

      c.   **Severance Pay.** The Company shall pay VP an amount equal to three (3) months ("Termination Period") of VP's Salary at the time of termination, in a single lump sum to be paid within thirty (30) days of the termination date, or on some other schedule agreed to by VP and the Company. In addition, all accrued shares of the Company's common stock due to the VP will be granted through the end of the Termination Period.

      e.   **Continued Benefits.** If VP and/or VP's spouse and covered dependants had elected group health plan (medical, dental, and/or vision) coverage, and VP and/or spouse and covered dependants elect COBRA continuation coverage upon termination of employment, then the Company shall pay the COBRA premiums, for the same individuals and coverages as when VP was employed, for up to six (6) months following the termination of employment. The Company may elect either to pay the premiums directly on VP's behalf, or pay VP an amount that, net of income taxes, equals the COBRA continuation coverage premiums. Such period shall count towards the Employer's continuation of coverage obligation under Section 4980B of the Internal Revenue Code ("COBRA"). VP agrees that the Company's obligation to continue this benefit ceases upon VP and/or his spouse or covered dependants being covered on another employer's group health plan.

      f.   **Termination by Employer for Cause or by VP Without Good Reason.** If the Company terminates VP's employment for Cause, or VP terminates employment without "Good Reason," the Company shall pay VP upon the effective date of

such termination all Salary, accrued vacation, and accrued shares of the Company's common stock and all reimbursable expenses through such termination date.

g. **Termination Due to "Disability."** If the Company terminates VP's employment on account of any mental or physical "Disability," VP shall be entitled to all Salary, accrued vacation, and accrued shares of the Company's common stock and all reimbursable expenses incurred through such termination date. In addition, the Company shall pay VP's Salary for six (6) months following the termination date (less the amount of any payments received by VP during such period under any Employer-sponsored disability plan), and pay for COBRA continuation premiums for VP's coverage for six (6) months following the termination date, which period shall count towards the Employer's continuation of coverage obligation under Section 4980B of Code (commonly referred to as "COBRA").

h. **Termination Upon Death of VP.** VP's employment under this Agreement shall be terminated upon the death of VP. In such case, the Company shall pay to the surviving spouse of VP, or if there is none, to the VP's estate that portion of VP's Salary, accrued vacation, accrued shares of the Company's common stock and reimbursable expenses that would otherwise have been paid to him for through the end of the month in which his death occurred.

i. **Employee Obligations Upon Termination.** Immediately upon the termination of employment, and at other times as requested by the Company, VP shall promptly deliver to the Company any and all equipment, documents or other property, in any media (electronic or otherwise), belonging to or relating to the business of the Company. In addition, VP, shall, if applicable, promptly tender his or her formal resignation as a director of the Company, failing which the Company is hereby appointed the agent of the VP for the purpose of effecting such resignation on VP's behalf.

j. **Termination Definitions.**

i. **"Cause."** For purposes of this Agreement, "Cause" shall mean: (a) dishonesty, fraud, or misconduct that relates to the business of the Company; (b) unauthorized use or disclosure of confidential information or trade secrets; or (c) conviction or confession of a crime punishable by law (except minor violations).

ii. **"Good Reason."** For purposes of this Agreement, "Good Reason" shall mean termination by VP as a result of: (a) a material reduction in VP's compensation defined as a reduction equal to, or greater than, ten percent (10%) of VP's then annual salary; (b) a material reduction in VP's duties and responsibilities; or (c) a relocation of VP's primary workplace by more than fifty (50) miles.

iii. **"Change of Control."** For purposes of this Agreement, the term "Change of Control" shall mean the occurrence of one or more of the following events: (a) One (1) person or entity acquiring or otherwise becoming the owner of fifty percent (50%) or more of the Company's outstanding common stock; (b) Replacement of a majority of the incumbent directors of the Company; (c) Dissolution or sale of fifty percent (50%) or

more in value of the Company's assets; or (d) the sale or assignment of the Company's intellectual property.

        iv.    "Disability." For purposes of this Agreement, "Disability" shall mean a medically diagnosed mental or physical impairment that renders VP incapable of performing the essential functions of his position, with or without reasonable accommodation *and which exists, or may reasonably be anticipated to exist,* for a period of six (6) consecutive months. The Company shall act in good faith in making any determination of Disability and shall take into account the medical opinions and judgment of a physician mutually-selected by VP and the Company.

      6.    **No Conflicts.** You represent that your performance of all the terms of this letter Agreement will not breach any other agreement to which you are a party.

      7.    **At-Will Employment.** Notwithstanding anything to the contrary in this letter Agreement, your employment with the Company is for an indefinite term and will at all times be on an "at will" basis, meaning that either you or the Company may terminate your employment at any time for any reason or no reason, without further obligation or liability except as otherwise expressly set forth herein and in any other written agreement between you and the Company.

      8.    **Legal Representation.** You acknowledge that the Company has recommended that you retain outside legal counsel in connection with the negotiation of this Agreement and that the Company's counsel is representing only the Company in connection with this letter and negotiations relating to your employment.

      9.    **Arbitration.** In the event that any disputes or claims arise relating to your employment relationship with the Company, including this letter Agreement, you agree to submit such disputes or claims to arbitration in accordance with the rules of the American Arbitration Association by one arbitrator appointed in accordance with said rules. You and the Company shall share equally in the cost of the arbitration to the extent permitted by law. Each party shall bear its own attorney fees, unless otherwise determined by the arbitrator. The arbitrator shall apply Washington law, without reference to rules of conflicts of law or rules of statutory arbitration, to the resolution of any dispute. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Notwithstanding the foregoing, the parties may apply to any court of competent jurisdiction for preliminary or interim equitable relief, or to compel arbitration in accordance with this paragraph, without breach of this arbitration provision. This Section 9 shall not apply to any dispute or claim relating to Proprietary Information and Inventions Agreement between you and the Company or other similar agreement obligating you to maintain the confidentiality of the Company's confidential information and assign all inventions to the Company.

      10.    **Non-Competition and Non-Solicitation.** While employed at the Company, and for a period of one (1) year thereafter, you will not directly or directly, within the Restricted Territory, (a) accept employment or engage in activities materially competitive with products, services, technology, product features or projects (including actual or demonstrably anticipated research or development) on which you worked or about which you learned Proprietary Information or trade secrets while employed at the Company; (b) render

similar services in any capacity other than on behalf of the Company to any client or customer of the Company for which you performed services during your employment with the Company; (c) contact any of the suppliers or customers of the Company or its subsidiaries for the purpose of soliciting orders or establishing relationships for any business enterprise that engages in activities competitive with products, services, technology, product features or projects (including actual or demonstrably anticipated research or development) on which you worked or about which you learned Proprietary Information or trade secrets while employed at the Company; or (d) solicit, encourage or induce any employee or consultant of the Company to terminate their employment or consulting relationship with the Company or to become an employee or a consultant of another person or business entity. For purposes of this Section 10, the "Restricted Territory" means anywhere in the world in which the Company conducts business, offers its products or services during the period of your employment with the Company, or demonstrably anticipates at the time of your termination of employment to offer its products or services during the following year. You acknowledge that the geographic, temporal and business activity scope of the covenants set forth in this Section 10 are reasonable and necessary to protect the Company's goodwill and relationships with customers, its proprietary and trade secret information, and the stability of its workforce.

11. **Choice of Law.** This letter Agreement shall be governed by the laws of the State of Washington, without regard to its conflicts of law provisions. The parties agree that any actions or proceedings arising under this Agreement that result in litigation shall be litigated in state or federal court in the State of Washington. The parties consent to the jurisdiction and venue of the foregoing courts.

We are all delighted to be able to extend you this offer and look forward to working with you. To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below and return it to me. This letter Agreement sets forth the terms of your employment with the Company and supersedes any prior representations or agreements, whether written or oral. This letter Agreement may be executed in one or more counterparts and may be executed by facsimile. This letter Agreement may not be modified or amended except by a written agreement, signed by the Company and by you.

Very truly yours,

QL2, Inc.
Russ Aldrich
CEO

ACCEPTED AND AGREED:

Scott A. Milburn

10/1/08
Date

Page 6 of 6

Scott Milburn

March 31, 2010

Mr. Russ Aldrich
CEO
QL2 Software, Inc.
Suite 410
316 Occidental Ave. S.
Seattle, WA 98104

Re: payment of severance

Dear Mr. Aldrich:

My employment agreement with QL2 included severance in the amount equal to three-months salary upon termination without cause. When I was terminated on February 9, 2010, I became entitled to that severance payment. The separation agreement I signed memorialized my right to severance, and in it I agreed to accept the severance payment in six bi-monthly payments rather than the lump sum within 30 days of my severance to which I was entitled.

This afternoon you informed me that the company has chosen to suspend my severance payments and did not make the payment that was due to me today, and that the company hoped to get caught up on my severance within several weeks. That course of action is not acceptable and constitutes a breach of the separation agreement. I have already compromised the payment to which I was entitled by agreeing to accept the payment over three months rather than 30 days. I am not willing to further compromise my payments by agreeing to defer them if the company is short of cash or has other reasons to choose not to make my payments.

My severance constitutes wages under Washington law. Fail to pay wages when due gives rise to a claim for double damages and attorneys' fees, and those who have control over whether wages are paid will be held personally liable for the failure to pay the wages.

If I do not by this Friday receive the payment that was due today, I will pursue legal action that will include seeking personal liability for double damages for the full amount remaining on my severance (i.e. $66,666.64), plus attorneys' fees, from those who have control over the payments, including board members and Brian Vincent.

7480 81st Pl SE Mercer Island, WA 98040



I am willing to consider waiving this breach of the separation agreement if I receive today's payment by this Friday.

Sincerely,

Scott Milhorn

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF KING

| | | |
|---|---|---|
| SCOTT MILBURN | | NO. 10-2-14293-2   SEA |
| | | Order Setting Civil Case Schedule (*ORSCS) |
| vs | Plaintiff(s) | |
| ROBERT GENISE, et al. | | ASSIGNED JUDGE Bradshaw          1 |
| | | FILE DATE:                04/16/2010 |
| | Defendant(s) | TRIAL DATE:            10/03/2011 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this Order Setting Case Schedule **(Schedule)** on the Defendant(s) along with the **Summons and Complaint/Petition**. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a *Notice of Appearance*, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____                    _____
         Print Name                                              Sign Name

Order Setting Civil Case Schedule (*ORSCS)                          REV. 12/08      1

## I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [KCLR] — especially those referred to in this Schedule. In order to comply with the Schedule, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [See KCLCR 26], and for meeting the discovery cutoff date [See KCLCR 37(g)].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of $200 must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of all parties and claims is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this Schedule are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a Notice of Settlement pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of all parties and claims is not filed by 45 days after a Notice of Settlement, the case may be dismissed with notice.

If you miss your scheduled Trial Date, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an Order of Dismissal, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
All parties to this action must keep the court informed of their addresses. When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING AND TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule if the case is subject to mandatory arbitration and service of the original complaint and all answers to claims, counterclaims and cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. Any party filing a Statement must pay a $220 arbitration fee. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements and/or Local Civil Rule 41.

**King County Local Rules are available for viewing at www.kingcounty.gov/courts/clerk.**

Order Setting Civil Case Schedule (*ORSCS)

REV. 12/08    2

## II. CASE SCHEDULE

| CASE EVENT | | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|---|
| Case Filed and Schedule Issued. | Fri | 04/16/2010 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR 2.1(a) and Notices on Page 2]. $220 arbitration fee must be paid | Fri | 09/24/2010 | * |
| DEADLINE to file Confirmation of Joinder if not subject to Arbitration. [See KCLCR 4.2(a) and Notices on Page 2]. | Fri | 09/24/2010 | * |
| DEADLINE for Hearing Motions to Change Case Assignment Area. [See KCLCR 82(e)] | Fri | 10/08/2010 | |
| DEADLINE for Disclosure of Possible Primary Witnesses [See KCLCR 26(b)]. | Mon | 05/02/2011 | |
| DEADLINE for Disclosure of Possible Additional Witnesses [See KCLCR 26(b)]. | Mon | 06/13/2011 | |
| DEADLINE for Jury Demand [See KCLCR 38(b)(2)]. | Mon | 06/27/2011 | * |
| DEADLINE for Setting Motion for a Change in Trial Date [See KCLCR 40(d)(2)]. | Mon | 06/27/2011 | * |
| DEADLINE for Discovery Cutoff [See KCLCR 37(g)]. | Mon | 08/15/2011 | |
| DEADLINE for Engaging in Alternative Dispute Resolution [See KCLCR 16(b)]. | Tue | 09/06/2011 | |
| DEADLINE for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLCR 4(j)]. | Mon | 09/12/2011 | |
| DEADLINE to file Joint Confirmation of Trial Readiness [See KCLCR 16(a)(2)]. | Mon | 09/12/2011 | * |
| DEADLINE for Hearing Dispositive Pretrial Motions [See KCLCR 56; CR 56]. | Mon | 09/19/2011 | |
| Joint Statement of Evidence [See KCLCR (4)(k)]. | Mon | 09/26/2011 | * |
| DEADLINE for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file Proposed Findings of Fact and Conclusions of Law with the Clerk) | Mon | 09/26/2011 | * |
| Trial Date [See KCLCR 40]. | Mon | 10/03/2011 | |

## III. ORDER

Pursuant to King County Local Civil Rule 4 [KCLCR 4], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Civil Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action must serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED: 04/16/2010

_[signature]_

PRESIDING JUDGE

Order Setting Civil Case Schedule (*ORSCS)

REV. 12/08    3.

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

### READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule. The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:** Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx .

### CASE SCHEDULE AND REQUIREMENTS
Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

### THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.

**A. Joint Confirmation regarding Trial Readiness Report:**
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g. interpreters, equipment, etc.).

The form is available at http://www.kingcounty.gov/courts/superiorcourt.aspx . If parties wish to request a CR 16 conference, they must contact the assigned court. Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding said report.

**B. Settlement/Mediation/ADR**
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand. Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held. **FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.**

**C. Trial:** Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court. The Friday before trial, the parties should access the King County Superior Cour website http://www.kingcounty.gov/courts/superiorcourt.aspx to confirm trial judge assignment. Information can also be obtained by calling (206) 205-5984.

### MOTIONS PROCEDURES

#### A. Noting of Motions

**Dispositive Motions:** All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge. The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules. Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Nondispositive Motions:** These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the Note for Motion should state "Without Oral Argument." Local Civil Rule 7 governs these motions, which include discovery motions. The local civil rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions calendar. Local Civil Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at http://www.kingcounty.gov/courts/superiorcourt/civil.aspx.

**Emergency Motions:** Under the court's local civil rules, emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call and without written motion, if the judge approves.

## B. Original Documents/Working Copies/ Filing of Documents

**All original documents must be filed with the Clerk's Office.** Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the new requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court. The exceptions to the e-filing requirement are also available on the Clerk's Office website.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom. Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator. On June 1, 2009 you will be able to submit working copies through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk.

**Service of documents:** E-filed documents may be electronically served on parties who opt in to E-Service within the E-Filing application. The filer must still serve any others who are entitled to service but who have not opted in. E-Service generates a record of service document that can be e-filed. Please see information on the Clerk's office website at www.kingcounty.gov/courts/clerk regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion. Do not file the original of the proposed order with the Clerk of the Court. Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.

**Presentation of Orders:** All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department. Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. If final order and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.

C.   Form

Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PETITIONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.

_____
PRESIDING JUDGE