The Honorable Karen A. Overstreet
Chapter 11
Hearing Location: 700 Stewart St., Rm. **7206**
PROPOSED Hearing Date May 14, 2010
Hearing Time: 9:30 a.m.
Response Date: at time of hearing

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

In re

QL2 SOFTWARE, INC.

Debtor.

Case No. 10-10209

DEBTOR'S EMERGENCY MOTION FOR AN ORDER GRANTING APPROVAL OF DIP LOAN, SECURITY INTERESTS PURSUANT TO 11 U.S.C. § 364 AND SUPERPRIORITY ADMINISTRATIVE CLAIMS

PLEASE TAKE NOTICE that Debtor QL2 Software, Inc. ("QL2" or "Debtor") has PROPOSED ex parte an order shortening time to hear its Emergency Motion for an Order Granting Approval of DIP Loan, Security Interests Pursuant to 11 U.S.C. § 364 and Superpriority Administrative Claims for hearing as follows:

JUDGE: Honorable Karen A. Overstreet        TIME: 9:30 a.m.

PLACE: United States Courthouse              DATE: May 14, 2010
       Courtroom 7206
       700 Stewart Street, Seattle WA 98101

If the Court grants the request to shorten time, the matter will be heard as noted above, and responses will be due at the time of the hearing.

EMERGENCY MOTION FOR
DIP LOAN - 1
#752345 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

## MOTION

QL2 Software, Inc., Debtor and Debtor-in-Possession herein ("<u>Debtor</u>"), moves the Court to hear on an emergency basis Debtor's Motion for Approval of DIP Loan. Debtor proposes that this matter be heard at either the beginning or the end of the 9:30 a.m. calendar on Friday, May 14, 2010. Debtor just learned that it did not receive a large receivable that was anticipated, with the result that the Debtor does not have funds to fully fund payroll this week. DMEP d/b/a/ Hale Global (the proposed purchaser of the assets) or an affiliate has agreed to lend $100,000 to the debtor on an emergency basis on the terms below.

Debtor seeks by this Motion entry of an order approving a DIP loan, secured pursuant to section 364, and with a superpriority administrative claim. Specifically, the Debtor requests that the Court enter the Order pursuant to Bankruptcy Rule 4001(c) which, among other things will:

a. Authorize Debtor to obtain the proposed debtor-in-possession loan of $100,000 from Hale pursuant to the terms outlined in this motion as amended up until the time of the hearing;

b. Grant Hale a security interest pursuant to section 364 (subject to the Tumelsons); and

c. Grant Hale administrative priority under Bankruptcy Code section 364(c)(1) superior to all claims except that of the Tumelsons.

As the court and parties are aware, on April 8, 2010, DMEP Corporation d/b/a/ Hale Global ("Hale") or its designee, assignee or nominee entered into a purchase and sale agreement ("P&SA) with QL2, as later amended, that provides at least a $2.5 million cash payment among other consideration for the purchase of QL2's assets. In conjunction with entering into the P&SA, QL2 submitted overbid procedures, which were approved by this court on April 30, 2010, for conducting an auction. The auction is to be held on June 2, 2010, at the offices of QL2's attorneys. The sale has been noted for approval pursuant to section 363 of the Bankruptcy Code

EMERGENCY MOTION FOR
DIP LOAN - 2
#752345 v1 / 40548-002

*Law Offices*
**KARR TUTTLE CAMPBELL**
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

on June 7, 2010. As of the filing of this motion, at least four other parties, besides Hale, the stalking horse bidder, have expressed interest as potential bidders in the auction to sell QL2's assets.

There are two secured creditors in this proceeding: Graham & Dunn, PS ("G&D"), securing payment for its legal fees in the approximate amount of $588,000 and the Tumelson Family Limited Partnership, Katie Taylor and Kelly Tumelson (collectively, the "Tumelsons"). The Tumelsons alleged in an amended proof of claim filed May 13, 2010, that they are owed $907,228.49.

The Debtor's primary chapter 11 exit strategy is to consummate the sale of substantially all of its assets. As noted above, the Debtor has already entered into a purchase and sale agreement subject to the results of a pending auction and approval by this court. The success of this sale depends on the continued viability of the Debtor's business.

This court has approved Cash Collateral Orders for the Debtor, which Orders anticipated the Debtor would manage its cash without additional financing until the sale closing. However, the Debtor's previous budget anticipated payment of a large account receivable in the early part of May. This payment has been delayed. Without the proposed loan, the Debtor will not be able to pay its employees for the current pay period. Failure to pay wages will have a decidedly detrimental impact on the Debtor's continued ability to operate.

The terms of the proposed Loan, subject to refinement up until the time of the hearing, are as follows:

    Amount: $100,000; Interest Rate: 8%
    Loan Fee: 3% ($3000)
    Attorneys' fees: Debtor will pay Hale's attorneys' fees
    Priority: Secured; Superpriority, Junior only to Tumelson's claim

EMERGENCY MOTION FOR
DIP LOAN - 3
#752345 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

> Repayment: To be repaid as soon as possible given Debtor's cash needs. If not repaid within two weeks, parties will negotiate full DIP loan protections.

The Debtor brings this DIP Motion on an expedited basis due to the immediate and irreparable harm suffered by the Debtor's estate if the Debtor cannot obtain the financing needed to sustain the business as a going concern. The Debtor has an immediate need to obtain the DIP Loan in order to permit, among other things, the orderly continuation of the operation of the business, to maintain business relationships with its vendors, suppliers and customers, and, most importantly, to make payroll.

Bankruptcy Rule 4001(c) governs the procedure for consideration of motions to obtain postpetition financing. The subsection (c)(2) provides for an expedited consideration of the DIP Motion.

> If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit . . .to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

The Ninth Circuit Court of Appeals has recognized that immediate interim relief may be crucial to the success of a corporate reorganization:

> We realize that "in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld" and that reorganization under the Bankruptcy Code "is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations" (citation omitted).

*In re Center Wholesale, Inc.* 750 F.2d 1440, 1449 n. 2 (10th Cir. 1985).

Pursuant to sections 364(a) and 364(b) of the Bankruptcy Code, the Debtor has attempted but is unable to obtain either unsecured credit or unsecured credit allowable under section 503(b)(I) of the Bankruptcy Code as an administrative expense.

EMERGENCY MOTION FOR
DIP LOAN - 4
#752345 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

The Debtor is also unable to obtain secured credit, allowable only under Bankruptcy Code sections 364(c)(2) and (3) on terms and conditions superior to those provided herein. The Debtor is unable to obtain credit for borrowed money without granting to the Lender (i) liens on and security interests in all of the assets of the Debtor pursuant to Bankruptcy Code sections 364(c)(2) and (3) which liens shall be junior to only the Tumelson Lien (to the extent that it is valid and allowed), and (ii) a superpriority administrative expense claim status pursuant to section 364(c)(1) of the Bankruptcy Code and as provided in the loan terms, but still subject to the superior Tumelsons Lien (to the extent that it is valid and allowed).

Authorization of this DIP Loan will facilitate the ultimate consummation of the Proposed Sale and thus the successful conclusion of this Case and will maintain the value of the Debtor's estate during the pendency of this Case. Thus, approval of the DIP Motion, entry of the Order, and borrowing by the Debtor under the Loans terms are in the best interests of the estate and its creditors.

The terms and conditions of the DIP Loan, including those which provide for the payment of interest to, and fees of, the Lender at the times and in the manner provided, are fair and reasonable, are temporary, and are believed by the Debtor to be the best available under the circumstances. The Debtor respectfully requests that the Court approve the requested emergency financing and grant the relief requested.

Dated this 13th day of May, 2010.

KARR TUTTLE CAMPBELL

/s/ Diana K. Carey

---

Diana K. Carey, WSBA #16239
Attorneys for Debtor-in-Possession,
QL2 Software, Inc.

EMERGENCY MOTION FOR
DIP LOAN - 5
#752345 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100