HILLIS CLARK MARTIN & PETERSON, P.S.
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Attorneys for Party in Interest
RateGain IT Solutions Pvt. Ltd.

HONORABLE KAREN A. OVERSTREET
Chapter 11 Proceeding
Location: Seattle
Hearing Date: August 6, 2010
Hearing Time: 11:00 a.m.
Response Date: July 30, 2010

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

QL2 SOFTWARE INC.,

              Debtor.

Case No. 10-10209-KAO

**RATEGAIN'S AMENDED
DISCLOSURE STATEMENT**

**IMPORTANT NOTICE:**

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION RELATING TO A COMPETING CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY PARTY-IN-INTEREST RATEGAIN IT SOLUTIONS PVT. LTD.

**PLEASE READ THIS DOCUMENT CAREFULLY.**

THE INFORMATION CONTAINED IN THIS DOCUMENT IS FOR PURPOSES OF SOLICITING YOUR ACCEPTANCE OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR ANY OTHER PURPOSE. THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE OR INCLUDE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. IF YOU DESIRE SUCH ADVICE, YOU SHOULD CONSULT YOUR OWN ATTORNEYS OR ADVISORS.

EXCEPT WHERE OTHER SOURCES ARE IDENTIFIED, RATEGAIN OR MANAGEMENT OF THE DEBTOR, BY VIRTUE OF THE DEBTOR'S DISCLOSURE STATEMENT, HAVE SUBMITTED THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. RATEGAIN DOES NOT AUTHORIZE ANY REPRESENTATIONS CONCERNING ITS COMPETING PLAN OTHER THAN THOSE IN THIS DISCLOSURE STATEMENT AND ACCOMPANYING DOCUMENTS. WHILE THIS DISCLOSURE STATEMENT RELIES ON INFORMATION SUPPLIED BY

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

THE DEBTOR, EITHER DIRECTLY TO RATEGAIN OR THROUGH ITS DISCLOSURE STATEMENT AND COURT FILINGS, THE DEBTOR HAS NOT AUTHORIZED THIS DISCLOSURE STATEMENT.

YOU SHOULD NOT RELY ON ANY REPRESENTATIONS OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT TO DETERMINE YOUR VOTE REGARDING RATEGAIN'S PLAN. NO OTHER PERSON IS AUTHORIZED TO MAKE REPRESENTATIONS ON BEHALF OF RATEGAIN OR ITS PLAN. RATEGAIN HAS USED CARE IN PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT ACCURATELY AND COMPLETELY IN ALL MATERIAL RESPECTS. NEVERTHELESS, RATEGAIN CANNOT AND DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY. IN PARTICULAR, EVENTS AND FORCES BEYOND RATEGAIN'S CONTROL MAY ALTER THE ASSUMPTIONS UPON WHICH THE FEASIBILITY OF THE PLAN IS SUBJECT. AMONG OTHER THINGS, THE DEBTOR MAY CONTINUE TO NEGOTIATE PAYMENT TERMS WITH CREDITORS, AND THE SPECIFIC TREATMENT OF CLAIMS MAY CHANGE AS A RESULT. IN ANY EVENT, RATEGAIN BELIEVES THAT THE PAYMENT TERMS PROPOSED BY ITS PLAN WILL NOT BE LESS FAVORABLE THAN THOSE DESCRIBED HEREIN.

**TO ALL PARTIES IN INTEREST:**

On January 11, 2010, QL2 Software, Inc. ("*Debtor*") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. The Debtor is a debtor-in-possession, and its case is pending before the above-captioned Court. Pursuant to this Court's Order, dated May 28, 2010, Party in Interest RateGain IT Solutions Pvt. Ltd. ("*RateGain*" or "*Proponent*") submits this Disclosure Statement in connection with its competing Plan of Reorganization (the "*Plan*"). This Disclosure Statement contains information on the Plan. The Proponent distributes this Disclosure Statement to you, along with a copy of the Plan, to allow you to make an informed decision in exercising your right to accept or reject the Plan. 11 U.S.C. § 1125.

The Court has approved this Disclosure Statement as containing information sufficient under the circumstances to enable a hypothetical reasonable investor to make an informed judgment about the Plan. The Court's approval of this Disclosure Statement does not constitute an endorsement of the Plan. ***To the extent there are any inconsistencies between the Plan and this Disclosure Statement, the terms of the Plan control.***

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

THE ONLY REPRESENTATIONS AUTHORIZED IN CONNECTION WITH THE PROPONENT'S PLAN OR THAT MAY BE MADE CONCERNING THE PROPONENT'S PLAN ARE CONTAINED IN THIS DISCLOSURE STATEMENT. THE FINANCIAL INFORMATION CONTAINED HEREIN, OR INCORPORATED BY REFERENCE, IS BASED ON THE DEBTOR'S DISCLOSURE STATEMENT, COURT FILINGS, AND INFORMATION PREVIOUSLY SUPPLIED BY THE DEBTOR, AND IS EFFECTIVE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. THE READER SHOULD NOT INFER OR ASSUME THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH IN THIS DISCLOSURE STATEMENT SINCE THE DATE BELOW. FINANCIAL INFORMATION, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, IS BASED UPON ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE AND PRUDENT, MAY NOT BE REALIZED AND WILL REMAIN SUBJECT TO INHERENT UNCERTAINTIES. THE FINANCIAL INFORMATION HAS NOT BEEN AUDITED AND IS BASED PRIMARILY ON REPRESENTATIONS BY THE DEBTOR. THUS, THE PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY REPRESENTED.

*The Proponent urges you to accept this Plan and to promptly return your completed ballot to enable your vote to be counted.*

## I.      DEFINITIONS AND INTERPRETATION

In addition to terms defined in other sections of the Plan and the Disclosure Statement, the following terms have the following meanings in this Plan and the Disclosure Statement:

1.      The term "*Administrative Bar Date*" means the date to be established by the Court as the last date to file Administrative Claims.

2.      The term "*Administrative Claim*" means a Claim for costs and expenses of administration allowed under 11 U.S.C. § 503(b), and referred to in 11 U.S.C. § 507(a)(2), including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating Debtor's business (such as wages, salaries or commissions for services), (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under 11 U.S.C. §§ 330(a) or 331, and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

RATEGAIN'S AMENDED
DISCLOSURE STATEMENT: 10-10209-KAO - 3

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

3.      The term "***Allowed Claims***" means a Claim against the Debtor (in the particular category, as appropriate) to the extent that:

(a)      (i) a proof of claim was timely filed with the Court on or before the Bar Date or Administrative Bar Date, as applicable , or is deemed timely filed under applicable law or by Order of the Court; or (ii) the Claim is listed in the schedules filed by the Debtor on January 22, 2010; and

(b)      (i) the Debtor or, where permitted by law, another party in interest, does not file an objection within a time fixed by the Court and the Claim is not otherwise a Disputed Claim (but only to the extent that such Claim is not a Disputed Claim), (ii) the Claim is allowed (and only to the extent allowed) by an Order of the Court; or (iii) the Claim is allowed pursuant to Article IV, Section 6 of the Plan.

4.      The term "***Bar Date***" means **May 28, 2010**, as established by the Court pursuant to that certain Order Waiving Case Management Conference and Setting Deadlines entered by the Court on January 29, 2010.

5.      The term "***Borcich Holdings***" means those certain 500,000 shares of Series A preferred stock in the Debtor, with a right to convert into 800,000 shares of common stock in the Debtor, currently owned by Vincent and Karyn Borcich (collectively, "***Borcich***").

6.      The term "***Claim***" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured; or, a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, matured, disputed, undisputed, secured or unsecured.

7.      The term "***Class***" means any grouping into which Allowed Claims and Interests are classified pursuant to Article 3 of this Plan.

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

8.      The term "*Committee*" means the Official Committee of Unsecured Creditors, appointed in the case by the United States Trustee.

9.      The term "*Common Shareholders*" means the holders of shares of common stock in the Debtor as of the Effective Date.

10.     The term "*Confirmation Order*" means an Order of the Court confirming this Plan pursuant to 11 U.S.C. § 1129, after notice and a hearing.

11.     The term "*Day*" or "*Days*" means all days other than Saturdays, Sundays, and Court holidays.  Unless otherwise specified, all periods measured in days as defined above.

12.     The term "*DIP Facility*" means the debtor-in-possession financing facility provided by Hale pursuant to that certain Debtor in Possession Loan and Security Agreement in which Hale agreed to provide up to $500,000 of term loans or other credit support.

13.     The terms "*Disputed Claim*" means a Claim: (a) that is scheduled as disputed, contingent, or unliquidated, or (b) for which a proof of claim has been filed and as to which an objection has been or may be filed by the Debtor or Proponent.  This includes all claim objections filed by the Debtor on June 11, 2010.

14.     The term "*Effective Date*" means the first Day that is more than ten Days after the date on which the Court enters a Confirmation Order, provided that: (a) there is no appeal pending from the Confirmation Order or, if an appeal has been filed, there is no stay pending appeal then in effect, and (b) that all Conditions to Effectiveness have been satisfied or waived by Proponents.

15.     The term "*Final Decree*" means an Order closing this Chapter 11 Case entered pursuant to Fed. R. Bankr. P. 3022.

16.     The term "*General Unsecured Claims*" means any Claim against the Debtor for which there are no assets of the Debtor serving as security, but not including any Priority Claims or Priority Tax Claims.

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

17. The term "*Hale*" means Copernicus Holdings LLC, an investment vehicle of DMEP Corporation, doing business as Hale Global. Hale is the sponsor and a proponent of the Debtor's Plan of Reorganization.

18. The term "*Interest*" means an equity interest in the Debtor. The Debtor has organized two classes of stock outstanding with respect to its Interest – common stock and preferred stock.

19. The term "*Interest Holder*" means the holder of an Interest in the Debtor.

20. The term "*Plan*" or "*Proponent's Plan*" means the Plan of Reorganization attached as an Appendix to this Disclosure Statement. The term "*Debtor's Plan*" means that certain Plan of Reorganization submitted by the Debtor and Hale.

21. The term "*Preferred Shareholders*" means the holders of shares of preferred stock in the Debtor as of the Effective Date.

22. The term "*Priority Claim*" means a Claim which, if allowed, would be entitled to priority pursuant to 11 U.S.C. §§ 507(a)(2), (3), (4), (5), or (7).

23. The term "*Priority Tax Claim*" means a Claim which, if allowed, would be entitled to priority under 11 U.S.C. § 507(a)(8).

24. The term "*Professional Fees*" means fees and costs incurred by professionals employed by the bankruptcy estate (*e.g.,* attorneys, accountants, real estate brokers, and others), pursuant to Orders of the Court ("*Professionals*").

25. The term "*Secured Claim*" means a Claim which, if allowed in the priority scheduled by the Debtor or asserted by the claimant, would be secured by a lien, security interest, or other charge against the property in which the bankruptcy estate has an interest, or which is subject to set-off under 11 U.S.C. § 553, to the extent of the value, determined in accordance with 11 U.S.C. § 506(a), of the interest of the holder of such secured Claim in the bankruptcy estate's interest in such property, or to the extent of the amount subject to any set-off, as the case may be.

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

26. The term "***Tumelson Holdings***" means those certain 750,000 shares of common stock in the Debtor presently held in escrow, over which Tumelson Family LP asserts a security interest, and which is the subject of a settlement proposed between Tumelson Family LP and the Debtor.

27. You should give each term not specifically defined in the Plan or Disclosure Statement its plain and ordinary meaning. Further, the rules of construction in 11 U.S.C. § 102 apply to the Plan and Disclosure Statement.

28. The singular includes the plural and vice versa.

29. Captions and headings are intended for convenience and have no force or effect. They should not be used to interpret or construe the Plan or Disclosure Statement.

## II.     BACKGROUND INFORMATION

Except as specifically set forth below, this Disclosure Statement adopts Article 2 of the Debtor's Disclosure Statement, as it may be amended, and incorporates it by reference.

On May 25, 2010, the Debtor cancelled the auction proposed under 11 U.S.C. § 363. Instead, the Debtor proposed a Plan of Reorganization in which it would merge into a new corporate entity controlled by Hale. On May 28, 2010, the Court authorized interested parties to file competing Plans that would provide better returns for creditors and interest holders.

## III.     ASSETS AND LIABILITIES OF DEBTOR

Except as specifically set forth below, this Disclosure Statement adopts Article 3 of the Debtor's Disclosure Statement and incorporates it herein by reference. On May 13, 2010, the Court authorized the DIP Facility. The Debtor has represented that Hale has advanced $100,000 under the DIP Facility. In addition, the Debtor has represented that Hale has acquired 1,337,500 shares of common stock in the Debtor since the commencement of this bankruptcy. Based on these representations, Hale will receive treatment under Class 1 with respect to the DIP Facility and under Class 8 as a Common Shareholder. On June 30, 2010, the Debtor supplied RateGain with a budget reflecting a cash position of approximately $450,000 on July 31, 2010.

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

## IV. SUMMARY OF COMPETING PLAN OF REORGANIZATION

The full text of the Plan is attached as an Appendix to this Disclosure Statement, and it has been distributed separately concurrent with this Disclosure Statement. The following description of the Plan is only a summary, and the Proponent encourages you to read the Plan before deciding to vote on it. The Plan is a competing Plan of Reorganization submitted at the invitation of the Court under its Order dated May 28, 2010. It is an alternative means of reorganization from the plan proposed by the Debtor and its sponsor, Hale.

### A. General Summary

The Plan will be funded through two separate sets of transactions. The first transaction is a direct purchase of common stock from all Class 8 Common Shareholders holding an Allowed Interest for the price of $0.35 per share. The transaction will be subject to terms and conditions consisting of representations and warranties that are standard in a stock purchase. The specific terms will be supplied through a subsequent Plan supplement, and they will ultimately be attached as *Exhibit B* to the Plan and incorporated therein. The second transaction will be the execution of an Asset Purchase Agreement, attached as *Exhibit A* to the Plan ("*Agreement*"). Under the Agreement, the Proponent will purchase the Debtor's assets for a straightforward purchase price of $3,500,000.00 in cash. The Debtor will use these funds to pay Allowed Claims and Allowed Interests as set forth in more detail below.

The Plan is intended to close out this bankruptcy case as expeditiously as possible, with full satisfaction of all Allowed Claims, settlement of both pending disputes, and an immediate return of $0.35 cents per share to Common Shareholders in Class 8. The Plan contemplates full payment on each Allowed Claim within ten Days after the Court determines that a Claim is an Allowed Claim. The Debtor has filed objections to certain Claims, and it may file additional objections, as necessary and appropriate, over the course of the bankruptcy case. The Debtor has also filed a motion to deem certain Claims as Allowed Claims.

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1  This Disclosure Statement assumes the following regarding the condition of the Debtor,

2  and the merits of the Claims, objections, and other disputes in this bankruptcy, ***though these***

3  ***assumptions are not conditions to effectiveness***:

4      1.      The Debtor is current on all applicable taxes and will incur no more than $10,000

5              in tax liability through entry of a Final Decree;

6      2.      The Debtor will prevail with respect to its objections on certain Claims, not prevail

7              with respect to other Claims, and will compromise certain Disputed Claims such

8              that: (a) the total amount of Allowed Secured Claims in Class 4 (see below) will

9              not exceed $21,218.30; (b) the total amount of Allowed Priority Claims will not

10             exceed $22,453.78; (c) the total amount of Allowed General Unsecured Claims

11             will not exceed $922,771.38; (d) the total amount of post-petition interest with

12             respect to Allowed Claims will not exceed $100,000; and (e) the total amount of

13             Professional Fees incurred after the Effective Date will not exceed $100,000; and

14     3.      The Debtor will have no cash on hand on the Effective Date.

15     These assumptions are further based on the Debtor's Monthly Financial Statements,

16  schedules, motions, and claim objections filed with the Court.  ***Appendix A***, attached hereto, is a

17  schedule detailing the Proponent's assumptions and demonstrating that the purchase price in the

18  Agreement is sufficient to pay the estimated final amount of Allowed Claims and Allowed

19  Interests.  Any funds remaining in the Debtor's possession upon payment of all Allowed Claims

20  and Allowed Interests will be distributed to the then-existing Common Shareholder in connection

21  with entry of the Final Decree.  These assumptions and analysis do not impact current Class 8

22  Common Shareholders, who will sell their common stock to the Proponent for $0.35 per share on

23  the Effective Date.

24     **B.      RateGain's Plans for Future Business Using the Debtor's Assets**

25     RateGain intends to maintain a significant presence in the United States and the United

26  Kingdom.  In particular, RateGain seeks to acquire the Debtor's assets for the specific purpose of

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

expanding its operations in the United States.  RateGain has created a new Washington corporate

entity, under the name "RateGain, Inc.," which will serve as its subsidiary in the United States,

headquartered in Seattle, Washington.  Under the Agreement, RateGain, Inc. is expected to

become RateGain's assignee for purposes of purchasing the Debtor's assets.  RateGain hopes to

engage local trade creditors in future business.  Further, while RateGain may undertake limited

force reductions consistent with traditional mergers and acquisitions, it plans to expand operations

in Seattle, Washington.  RateGain hopes to retain the majority of the Debtor's current employees,

and it plans to hire new employees in the months following its acquisition.  RateGain is also open

to a continued role for management, where appropriate.  In short, this is not a "mass outsourcing"

plan, as some have suggested.  Instead, it is intended to help RateGain establish a foothold and

expand its business in the United States.

### C. Administrative and Priority Tax Claims

The Debtor has represented that, with the exception of certain Professional Fees and

Disputed Claims, the Debtor has paid all known Administrative Claims.  The Plan provides for

payment of all Administrative Claims deemed Allowed Claims, and the Proponent assumes there

will be $400,000 in unpaid Administrative Claims that will be deemed Allowed Claims.

The Debtor has made no representation regarding unpaid or outstanding Priority Tax

Claims.  The Proponent assumes there are currently no unpaid or past due taxes, and the Debtor

will incur no more than $10,000 in Priority Tax Claims between the Effective Date and final

dissolution.  The Plan provides for payment of all Priority Tax Claims deemed Allowed Claims

consistent with the Debtor's Plan and the Bankruptcy Code.

### D. Classified Claims and Interests

#### 1. *Class One – Hale Global*

Hale is the sole member of Class 1, as the lender of the DIP Facility.  The Plan will pay

the DIP Facility in full, with interest at the contract rate, within ten Days of the Effective Date.

Class 1 is unimpaired and not entitled to vote on the Proponent's Plan.

RATEGAIN'S AMENDED
DISCLOSURE STATEMENT: 10-10209-KAO - 10

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

## 2. *Class Two – Tumelsons*

Tumelson Family LP ("*Tumelson*") is the sole member of Class 2. Tumelson has asserted a Secured Claim in the amount of $907,228.49 as of May 15, 2010 ("*Tumelson Secured Claim*"). Tumelson asserts that its Claim is secured by certain collateral including, without limitation, the Tumelson Holdings, the Debtor's accounts receivable, and Patent No. 7418440. As described in the Debtor's Plan and Disclosure Statement, the Debtor has been engaged in litigation regarding the validity and priority of the Tumelson Secured Claim. The Debtor has represented that it intends to resolve the dispute regarding the Tumelson Secured Claim as part of the Debtor's Plan. The Debtor and Tumelson have previously submitted a Settlement Agreement for the Court's approval, under which the Debtor would pay $650,000 in cash and agree to release the Tumelson Holdings to Tumelson in settlement of the adversary proceeding (the "*Tumelson Settlement*"). The Court has not yet approved the Tumelson Settlement.

Under RateGain's Plan, the Debtor would resolve the dispute on the same material terms as the Tumelson Settlement, except that the Proponent will purchase the Tumelson Holdings as part of the settlement. No more than two Days after the Effective Date, Tumelson will receive $232,500 from the Proponent in exchange for title to the Tumelson Holdings. The transfer of title to the Tumelson Holdings will be subject to the terms and conditions set forth in *Exhibit B* to the Plan. This equates to a share price of $0.31 per share. No more than ten Days after the Effective Date, Tumelson will receive $650,000 in cash in full and final settlement of all claims and disputes between Tumelson and the Debtor.

Further, the Confirmation Order will: (i) constitute a release, effective as of the Effective Date, of any claims, causes of action, or rights of any nature whatsoever that the Debtor or its bankruptcy estate may have, against Tumelson, and their partners, employees, agents, shareholders, members, managers, trustees, representatives, parents, subsidiaries, successors, assigns, affiliates, related entities, nominees and attorneys, acting individually and in their representative capacity on behalf of Tumelson, of and from any and all claims, demands,

RATEGAIN'S AMENDED
DISCLOSURE STATEMENT: 10-10209-KAO - 11

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

liabilities or actions of any nature whatsoever (the "***Released Tumelson Claims***"), whether such Released Tumelson Claims, arising before the Effective Date, are known or unknown, or arise under state or federal law, including without limitation any claims relating in any way to the prior litigation between Tumelson and Debtor and any Avoidance Actions, as that term is defined in the Tumelson Settlement, except those claims arising under or concerning the Plan and its enforcement, (ii) effect the dismissal with prejudice of the Tumelson Adversary Proceeding (as defined in the Debtor's Disclosure Statement) on the Effective Date, and (iii) entitle Tumelson to keep all prior payments of any kind made by the Debtor with regard to the Tumelson Secured Claim or the Tumelsons' claims against any other party.

Class 2 is impaired and entitled to vote on the Proponent's Plan.

### 3. *Class Three – Graham & Dunn*

Graham & Dunn P.C. is the sole member of Class 3. It has asserted a Secured Claim in the amount of $641,503.93. Graham & Dunn asserts that its Claim is secured by essentially all of the Debtor's assets.

Under the Proponent's Plan, Graham & Dunn's Claim will be deemed an Allowed Claim on the Effective Date, and it will be paid in full within ten Days of the Effective Date. The Proponent's Plan also allows Graham & Dunn to retain its security interests pending payment.

Class 3 is unimpaired and not entitled to vote on the Proponent's Plan.

### 4. *Class Four – Other Secured Claims*

Class 4 consists of any other creditor holding a Secured Claim, who is not a member of Classes 1 through 3. The Proponent's Plan will pay each Secured Claim that is deemed an Allowed Claim based on applicable terms or through a separate agreement between the holder of the Allowed Claim and the Proponent within ten Days of the Effective Date.

Class 4 is unimpaired and not entitled to vote on the Proponent's Plan.

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

### 5. *Class Five – Priority Claims*

Class 5 consists of the holders of Priority Claims. Claim numbers 7, 8, and 13 will be deemed Allowed Claims on the Effective Date. The Proponent anticipates that other Priority Claims will be reduced, by negotiation or by motion pursuant to Fed. R. Civ. P. 3007, such that the total amount of Allowed Claims in this class does not exceed $22,453.78. All Allowed Claims in this class will be paid in full, with interest at the applicable contract rate or rate established by state law, within ten Days of their determination as an Allowed Claim.

Class 5 is unimpaired and not entitled to vote on the Proponent's Plan.

### 6. *Class Six – General Unsecured Claims*

Class 6 consists of General Unsecured Claims. As of June 29, 2010, the Debtor has filed a motion to allow the Claim Nos. 1-4, 7-11, 13, 14, 17, and certain scheduled Claims. As of June 25, 2010, the Debtor has filed claim objections with respect to Claim Nos. 12, 16, 19, 22, 26, and 31-34, thereby making them Disputed Claims. After examining the Debtor's objections, the Proponent believes that it will prevail with respect to Claim Nos. 12, 16, 22, 26, 31, 32, and 34. With respect to Claim Nos. 12, 26, and 32, in an abundance of caution, the Proponent assumes the Debtor will pay the amount stated in its schedules. With respect to Claim Nos. 19 and 33, in an abundance of caution, the Proponent assumes the Claim will be paid in full.

The Proponent's Plan provides that all other General Unsecured Claims will be deemed Allowed Claims unless the Debtor files an objection to the Claim no more than 30 Days after the Effective Date or the date on which the Claim is filed, whichever is later. Before entry of the Confirmation Order, the Debtor will supplement the Proponent's Plan with a list of Scheduled Claims that will be deemed Allowed Claims on the Effective Date. Each Further, the Proponent will withdraw its Claim on the Effective Date.

Allowed Claims in this class will be paid in full, with interest at the applicable contract rate or rate established by state law, within ten Days of their determination as an Allowed Claim.

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

The Proponent anticipates that the amount of Disputed Claims will be reduced such that the total amount of Allowed Claims in this class does not exceed $922,771.38.

Class 6 is unimpaired and not entitled to vote on the Proponent's Plan. Class 6 may vote a preference as between the Proponent's Plan and the Debtor's/Hale's Plan.

### 7.  *Class Seven – Vincent and Karyn Borcich*

Vincent and Karyn Borcich (collectively, "***Borcich***") are the sole members of Class 7. They have asserted a Claim in the amount of $414,055.00, unsecured, or, alternatively, in the amount of $760,066.00, with no identified classification (the "***Borcich Claim***"). The Borcich Claim is based on the Borcich Holdings. The Debtor has objected to the Borcich Claim, and it has commenced an adversary proceeding against Borcich alleging certain misconduct by Vincent Borcich (the "***Borcich Litigation***"). Under RateGain's Plan, Borcich will receive treatment as a Preferred Shareholder with respect to the Borcich Claim consistent with 11 U.S.C. § 510. Borcich is the sole Preferred Shareholder.

Under RateGain's Plan, the Debtor will dismiss the Borcich Litigation on the Effective Date. If the Borcich Litigation were not dismissed, the Debtor would incur substantial new Administrative Claims in connection with legal expenses. Administrative Claims would be paid ahead of other Allowed Claims and Allowed Interests. 11 U.S.C. § 503(b). Moreover, the Proponent believes there are significant challenges with the case against Borcich. For these reasons, the Proponent believes it is in the best interests of creditors and equity holders to dismiss the Borcich Litigation in favor of a faster and cheaper resolution of this bankruptcy.

Also on the Effective Date, the Borcich Holdings will convert into 800,000 shares of common stock in the Debtor, as provided in the Debtor's Amended Articles of Incorporation (the "***Converted Borcich Holdings***"). No more than two Days after the Effective Date, Borcich will receive $248,000 from the Proponent in exchange for title to the Converted Borcich Holdings. This equates to a share price of $0.31 per share. The transfers of title to the Converted Borcich Holdings will be subject to the terms and conditions set forth in ***Exhibit B*** to this Plan.

RATEGAIN'S AMENDED
DISCLOSURE STATEMENT: 10-10209-KAO - 14

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

No more than ten Days after payment of all Allowed Claims in Classes 1-6, Borcich will be paid $400,000 plus accrued dividends accruing at the rate of 2.5 percent per annum from January 1, 2009, or all funds remaining in the Debtor's possession, whichever is less, in cash (the "***Preferred Stock Payment***").

Class 7 is impaired and entitled to vote on the Plan. Class 7 may also vote a preference as between the RateGain's Plan and the Debtor's/Hale's Plan.

### 8. *Class Eight - Common Shareholders*

Class 8 consists of the Common Shareholders. On the Effective Date, or on the date on which a Disputed Interest is deemed to be an Allowed Interest, whichever is sooner, each Common Shareholder in Class 8 will receive the amount of $0.35 per share from the Proponent in exchange for title to their common stock. The transfers of title will be subject to the terms and conditions set forth in ***Exhibit B*** to this Plan.

Within 30 calendar days after payment of all Allowed Claims and the Preferred Stock Payment, the then-existing Common Shareholder will receive all remaining funds in the Debtor's possession, if any, less a reasonable amount, not exceeding $200,000, retained to pay taxes and Administrative Claims accrued during the wind up and dissolution of the Debtor. Any funds remaining in the Debtor's possession at final dissolution will be distributed among the then-existing Common Shareholder in connection with entry of the Final Decree.

Class 8 is impaired and entitled to vote on the RateGain's Plan. Class 8 may also vote a preference as between the RateGain's Plan and the Debtor's/Hale's Plan.

### 9. *Unclaimed Payments*

Any check issued in payment of an Allowed Claim or Allowed Interest that is not deposited by the payee within 90 calendar days of its issuance will be deemed null and void. All funds represented by any such check will be distributed to the then-existing Common Shareholder. Under these circumstances, the holder of any Allowed Claim or Allowed Interests, and successors thereto, will be discharged and forever barred from asserting the Claim or Interest

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

against the Debtor or Proponent notwithstanding any federal or state escheat laws to the contrary.

### V.    MEANS OF EFFECTUATING THE COMPETING PLAN

#### A.    Funding

The Proponent will purchase all common stock in the Debtor from Common Shareholders, subject to the terms and conditions in ***Exhibit B***, as detailed in the treatment of Classes 2, 7, and 8 above.  In addition, the Proponent will purchase all assets of the Debtor identified in the Asset Purchase Agreement on the terms and conditions in the Agreement (the "***Sale***") pursuant to 11 U.S.C. §§ 105; 363; 1123(a)(5); 1123(b)(4); and 1142(b).  The Sale will close on the terms in the Agreement, including timely payment of the purchase price of $3,500,000.  The Proponent has also agreed to accept deferred revenue obligations pursuant to the Agreement.  The Court has the authority to require the Debtor to affect the Sale by entry of the Confirmation Order.  11 U.S.C. § 105; 1142(b).

#### B.    Timing

The Plan is designed to make an immediate payment of $0.35 per share to Common Shareholders in Class 8, and prompt settlement payments to Interest holders in Classes 2 and 7, including a share price of $0.31 per share.  The Plan is further designed to make all other payments and distributions on a reasonably expedited basis. The Debtor or Proponent may dispute certain Claims and reject certain contracts in order to realize the assumptions set forth in this Disclosure Statement, which are for the benefit of the holders of Allowed Claims and Interests.

Notwithstanding the foregoing, the Plan is not intended to delay payment and distribution of the Sale proceeds.

#### C.    Unclaimed Payments and Distributions

All unclaimed and un-cashed funds remaining 90 calendar days after the distribution  of the Preferred Stock Payment, less certain funds retained to pay taxes and dissolve the Debtor, will be distributed to the then-existing Common Shareholder.  If any checks constituting a payment to the holder of an Allowed Claim or a distribution to the holder of an Allowed Interest are returned

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington   98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

as undeliverable, the un-cashed check will be deemed null and void. Any funds represented by a null and void check will be distributed to the then-existing Common Shareholder. The holder of any Claim or Interest, or any successor thereto, will be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

## VI.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Proponent anticipates that the Debtor will reject two leases in this bankruptcy under 11 U.S.C. § 365. The lessors have already filed a Claim for the full amount of their respective leases: Claim No. 32 (403 Westpark - $78,783) and 25 (Burke State Building - $567,614.51). The Debtor has filed an objection to Claim No. 32, and the Proponent believes it is likely to prevail. In an abundance of caution, the Proponent's analysis assumes the Debtor will pay 403 Westpark the amount stated in the Debtor's schedules ($9,348.54). The Debtor is currently negotiating a settlement of Claim No.25. The Proponent's assumptions in this Disclosure Statement account for resolution of that Claim based on information supplied by the Debtor.

## VII.    LIQUIDATION ANALYSIS

Plan confirmation requires the Court to find that holders of Allowed Claims will receive or retain property of a value under the Plan that is not less than the amount they would receive or retain through liquidation under Chapter 7. 11 U.S.C. § 1129(a)(7). This requirement applies to classes of claims or interests in which acceptance of the Plan is not unanimous.

A valuation would be the traditional "first step" in a liquidation analysis. Due to the unique posture of this case, the Proponent is unable to provide a valuation of the Debtor's assets. Nevertheless, the Proponent believes that the Plan provides the best recovery for creditors and interest holders in comparison to the Debtor's Plan and to liquidation under Chapter 7.

The Plan is a straightforward purchase and sale of substantially all of the Debtor's assets. The Proponent intends to use the acquired assets in its business operations. For this reason, the Proponent is willing to pay a premium purchase price. In contrast, liquidation under Chapter 7 would be a distressed sale that is unlikely to generate the same return and is likely to involve

RATEGAIN'S AMENDED
DISCLOSURE STATEMENT: 10-10209-KAO - 17

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

more administrative costs than the Plan. Further, the Plan intends to pay all Allowed Claims in full, including post-petition interest at the applicable contract rate or rate established by state law. Because the Proponent has offered a premium purchase price higher than what would be obtained through distressed sales under Chapter 7, the Plan contemplates a full distribution on account of the Preferred Shareholder and a distribution of about $0.37 per share to Common Shareholders. Accordingly, creditors and interest holders will receive at least the same amount through the Plan that they would receive in liquidation under Chapter 7.

## VIII.   RISK FACTORS

The Plan is subject to approval by impaired classes of creditors entitled to vote under the Bankruptcy Code. The Plan is also subject to entry of a Confirmation Order by the Court. While the Proponent believes these requirements will be satisfied, it cannot assure that the Plan will be accepted by the requisite number and amount of creditors or confirmed by the Court. If the Plan is not accepted or confirmed, all creditors and interest holders face substantial risks due to the uncertainty and costs associated with a modified Plan or conversion and liquidation under Chapter 7. Further, the payments and distributions in the Plan depend on many assumptions, as detailed in this Disclosure Statement. Some or all of these assumptions may not materialize, which could preclude the Plan from yielding the returns and payments described in this Disclosure Statement. Finally, this Plan is subject to certain other Conditions to Effectiveness, set forth in the Plan. The Proponent believes these conditions will be satisfied by or before Confirmation.

## IX.      FEDERAL INCOME TAX CONSEQUENCES

Except as specifically set forth below, this Disclosure Statement adopts Article 9 of the Debtor's Disclosure Statement, as it may be amended, and incorporates it herein by reference.

The Debtor's analysis regarding the merger of a C corporation into a limited liability company does not apply to this Plan because the Plan does not involve merging the Debtor into a new corporate entity.

**X.    CONFIRMATION OF THE COMPETING PLAN**

This Disclosure Statement adopts Article 10 of the Debtor's Disclosure Statement, as it may be amended, and incorporates it herein by reference.

DATED this 29th day of July, 2010.

RATEGAIN IT SOLUTIONS, PVT. LTD.


By     */s/ Bhanu Chopra*_____
      Bhanu Chopra
      Chief Executive Officer

HILLIS CLARK MARTIN & PETERSON, P.S.


By     */s/ Amit D. Ranade*_____
      Amit D. Ranade, WSBA #34878
Attorneys for Party in Interest
RateGain IT Solutions Pvt. Ltd.

**HILLIS CLARK MARTIN & PETERSON, P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

| Class | | Pay Amount | Balance |
|---|---|---|---|
| **RateGain Asset Purchase** | | | **$ 3,500,000.00** |
| **Administrative / Tax** | | $ 510,000.00 | **$ 2,990,000.00** |
| | Professional Fees | *$ 400,000.00* | |
| | Fees after Effective Date | *$ 100,000.00* | |
| | Taxes | *$ 10,000.00* | |
| **Hale Global** | | $ 225,000.00 | **$ 2,765,000.00** |
| **Tumelsons** | (settlement payment amount) | $ 650,000.00 | **$ 2,115,000.00** |
| **G&D** | | $ 641,503.93 | **$ 1,473,496.07** |
| **Secured** | | $ 21,218.30 | **$ 1,452,277.77** |
| **Priorities** | | $ 22,453.78 | **$ 1,429,823.99** |
| **Unsecureds** | | $ 922,771.38 | **$ 507,052.61** |
| | includes post-petition allowed interest | *$ 100,000.00* | |
| **Borcich** | (Preferred Stock Payment) | $ 416,656.00 | **$ 90,396.61** |
| **Common Stockholder** | | $ 90,396.61 | **$ -** |