The Honorable Karen A. Overstreet<br>
Chapter 11<br>
Hearing Date: August 6, 2010<br>
Hearing Time: 11:00<br>
Response Due: July 30, 2010

1
2
3
4
5
6
7
8

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>QL2 SOFTWARE, INC.,<br><br>        Debtor. | Case No. 10-10209-KAO<br><br>ORDER CONFIRMING DEBTOR'S AND SPONSOR'S FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED JULY 2, 2010 AS MODIFIED |

THIS MATTER having come before the Court on August 6, 2010 for hearing (the "***Confirmation Hearing***") pursuant to the Order Approving Disclosure Statements and Setting Plan Confirmation Deadlines, and Notice Thereof entered July 1, 2010 (Dkt # 302) ("***Disclosure Statement Order***") to consider confirmation of (a) Debtor's and Sponsor's First Amended Joint Chapter 11 Plan of Reorganization as of July 2, 2010, ("***Debtor/Hale Plan***")[1] filed by QL2 Software, Inc. ("***Debtor***") and Copernicus Holdings LLC, an investment vehicle of DMEP Corporation d/b/a Hale Global ("***Hale***"); and (b) RateGain's Second Amended Competing Chapter 11 Plan of Reorganization ("***RateGain Plan***") filed by RateGain IT Solutions Pvt. Ltd. ("***RateGain***"). The Court finds that the Debtor/Hale Plan and the

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Debtor/Hale Plan.

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - 1
#764191 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

1  RateGain Plan and accompanying documents were mailed to all creditors and equity holders

2  on July 3, 2010, and that notice, opportunity for hearing and solicitation of votes with respect

3  to confirmation of the both Plans was fair and in compliance with the Disclosure Statement

4  Order and the Bankruptcy Code and Rules; the Court having reviewed the Objections and

5  Responses filed for and in opposition to each Plan, the Ballot Summary and Debtor's and

6  RateGain's Preconfirmation Reports, and finding that the requirements for confirmation set

7  forth in 11 U.S.C. 1129(a) and (b) have been satisfied with respect to the Debtor/Hale Plan

8  but that certain questions exist with respect to confirmation of the RateGain Plan;  the Court

9  having made further findings and conclusions on the record at the Confirmation Hearing

10  which are incorporated by this reference pursuant to Federal Rule of Bankruptcy Procedure

11  7052; the Court finding that all objections to the Debtor/Hale Plan should be overruled and

12  that the Debtor/Hale Plan is confirmable as a matter of fact and law as a consensual plan

13  under Section 1129(a), without resort to the cramdown provisions of Section 1129(b); that

14  objections to the RateGain Plan as reflected in the pleadings and as further explicated on the

15  record may well have merit but that the Court need not make final findings and conclusions

16  with respect to such objections regarding confirmability of the RateGain Plan, because the

17  RateGain Plan will require cramdown under Section 1129(b), and the creditors and interest

18  holders, as a whole and without regard to their relationship to Hale, the Debtor, or to

19  RateGain, have expressed a preference for the Debtor/Hale Plan; the Court finding that the

20  settlement with the Tumelsons is in the best interests of Debtor, its estate and creditors and

21  that the terms of the settlement as incorporated in the Debtor/Hale Plan were negotiated,

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - 2
#764191 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

1    proposed and entered into without collusion, in good faith and from arm's length bargaining

2    positions; and the Court otherwise being fully advised; now, therefore, it is hereby

3

4          ORDERED, ADJUDGED AND DECREED that:

5          1.     The Debtor/Hale Plan, a copy of which is attached as <u>Exhibit A</u> hereby is

6    confirmed and approved in each and every respect, as modified and clarified by this Order,

7    having met the requirements of 11 U.S.C. § 1129. The terms of the Debtor/Hale Plan are

8    incorporated into, and are an integral part of, this Order. To the extent there are any

9

10    inconsistencies between the Debtor/Hale Plan and this Order, this Order shall control.

11          2.      Based on counsel's representations and agreements on the record, the

12    Debtor/Hale Plan is hereby modified as follows:

13                 a.    The Sponsor Equity Contribution shall be in the amount of $2,000,000

14                     and the Sponsor Exit Facility shall be in an initial amount of up to

15

16                     $2,000,000; to the extent necessary to make distributions under, or

17                     otherwise perform under, the Debtor/Hale Plan, Hale shall increase the

18                     Sponsor Exit Facility by an additional $1,000,000; therefore, the

19                     maximum amount of the combined Sponsor Exit Facility and Sponsor

20

21                     Equity Contribution shall be up to $5,000,000, or such greater amount

22                     as will be required to make all payments to all allowed claims, all

23                     allowed administrative expense claims, and all priority tax claims in

24                     this case, it being understood that all payments promised to be made by

25

26                     the Reorganized Debtor to holders of pre-confirmation claims shall be

27                     fully funded by Hale or by the Debtor's cash on hand on the date this

28

*Law Offices*
K A R R   T U T T L E   C A M P B E L L
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Order is entered. The following payments shall be made separately by Hale and shall not be made out of or deducted from the Sponsor Exit Facility or the Sponsor Equity Contribution: (i) the payment in the amount of $225,000 to Class 2 under the Debtor/Hale Plan (Tumelsons); and (ii) any payments to holders of New Preferred units who elect to redeem such units at any time before the fifth anniversary of the Effective Date, at a price equal to the Liquidation Preference pursuant to the terms of the Debtor/Hale Plan, p. 18, lines 23-26.

     b.  Hale has waived the condition contained in Section 4.1(b), which provided that it was a Condition to Effectiveness of the Debtor/Hale Plan that "[t]he aggregate amount of Professional Fees payable by the Bankruptcy Estate, whether Allowed or subject to further proceedings, shall be no more than $500,000."

3.    Confirmation of the RateGain Plan is denied.

4.    All objections to the Debtor/Hale Plan are overruled, including without limitation the objections filed by RateGain and Vincent and Karyn Borcich.

5.    The Court finds the Debtor/Hale Plan is feasible, that a substantial likelihood exists that the estate will be able to satisfy its obligations under the Debtor/Hale Plan, and that each class of claims and interests is either unimpaired or it has accepted the Debtor/Hale Plan by requisite majorities pursuant to Section 1126.

6.    Pursuant to 11 U.S.C. § 1141(d), confirmation of the Debtor/Hale Plan pursuant to this Order discharges the Debtor and Reorganized QL2 from any debt that arose

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - 4
#764191 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

before the date of entry of this Order and any debt of a kind specified in 11 U.S.C. §§ 502(g), 502(h), or 502(i), whether or not a proof of claim based on such debt was filed or deemed filed under 11 U.S.C. § 501, such claim is allowed under 11 U.S.C. § 502, or the holder of such claim has accepted the Debtor/Hale Plan.

7.     This Order constitutes an injunction against all actions relating in any way to any claims or causes of action against the Debtor or its estate arising out of facts and circumstances present at or before the Effective Date, to the same extent as the automatic stay set forth in 11 U.S.C. § 362(a) with respect to property of the Debtor.

8.     Except as specifically provided elsewhere in the Debtor/Hale Plan, all assets of Debtor will revest in Reorganized QL2 pursuant to the terms of the Debtor/Hale Plan, including Section 5.2 thereof.

9.     Subject to the terms of Section 5.2 of the Debtor/Hale Plan, this Confirmation Order constitutes a release, effective as of the Effective Date, of any claims, causes of action or rights of any nature whatsoever Debtor, Reorganized QL2, or the Estate may have, whether known or unknown, liquidated or unliquidated, fixed or contingent, against Sponsor or any of its members, officers, agents, affiliates, investors and professionals, or against any of Debtor's officers, directors and agents in such positions as of the date of filing of the Debtor/Hale Plan, and professionals employed pursuant to Orders of the Bankruptcy Court, for matters relating to this Chapter 11 case or otherwise arising after the Petition Date and prior to the Effective Date.

10.     Debtor is authorized to execute and deliver all such documents and to take all such actions as may be reasonable or necessary to implement and consummate the

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - 5
#764191 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Case 10-10209-KAO   Doc 457   Filed 08/11/10   Entered 08/11/10 13:29:33   Page 5 of 7

Debtor/Hale Plan. The approvals and authorizations specifically set forth in this Order are non-exclusive and are not intended to limit the authority of Debtor or its representatives to take any and all actions necessary or appropriate to implement any transactions contemplated by the Debtor/Hale Plan or this Order.

11.    In accordance with Section 1146(c) of the Bankruptcy Code, the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Debtor/Hale Plan or this Order, or any transaction contemplated hereby or thereby, or any transactions arising out of, contemplated by, or in any way related to, the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state or local government officials or agents are hereby directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

12.    The Court shall and hereby does retain jurisdiction over these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Bankruptcy Code, for the purposes set forth in the Debtor/Hale Plan and for such other purposes as may be necessary or useful to aid in the confirmation or consummation of the Debtor/Hale Plan and implementation of the Debtor/Hale Plan as set forth therein.

DATED this _____ day of August, 2010.

UI *Karen A. Overstreet* GE
**United States Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - 6
#764191 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Presented by:


/s/ Diana K. Carey
Diana K. Carey, WSBA #16239
Of Karr Tuttle Campbell
Attorneys for QL2 Software, Inc.

ORDER CONFIRMING DEBTOR'S PLAN OF
REORGANIZATION - 7
#764191 v1 / 40548-002

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

# EXHIBIT



**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

In re

QL2 SOFTWARE, INC.
316 Occidental Ave. S, Ste. 410
Seattle, WA 98104

           Debtor.

Case No. 10-10209

DEBTOR'S AND SPONSOR'S FIRST AMENDED
JOINT CHAPTER 11 PLAN OF REORGANIZATION
DATED AS OF JULY 2, 2010

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

# TABLE OF CONTENTS

**ARTICLE 1. DEFINITIONS AND RULES OF INTERPRETATION** ...................................................... 1

    Section 1.1    Definitions.......................................................................... 1

    Section 1.2    Other Defined Terms. .......................................................... 9

    Section 1.3    Rules of Interpretation. ....................................................... 9

    Section 1.4    Time Periods. .................................................................... 10

**ARTICLE 2. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ....................... 10

    Section 2.1    Treatment of Unclassified Claims ..................................... 10

        (a)         Administrative Claims ...................................................... 10

        (b)         Priority Tax Claims........................................................... 12

    Section 2.2    Classified Claims and Interests ......................................... 12

        (a)         Class 1 (Sponsor) ............................................................. 12

        (b)         Class 2 (Tumelsons).......................................................... 13

        (c)         Class 3 (Graham & Dunn) ................................................ 14

        (d)         Class 4 (Other Secured Claims) ....................................... 15

        (e)         Class 5 (Allowed Priority Claims) ................................... 15

        (f)         Class 6 (Allowed General Unsecured Claims) .................. 15

        (g)         Class 7 (Old Preferred Shareholders) ............................... 16

        (h)         Class 8 (Old Common Shareholders) ............................... 17

**ARTICLE 3. MEANS OF EFFECTUATING THE PLAN** ........................................................ 20

    Section 3.1    Postconfirmation Ownership and Management..................... 20

    Section 3.2    Funding for the Plan.......................................................... 21

    Section 3.3    Operations ........................................................................ 21

    Section 3.4    Distributions..................................................................... 21

        (a)         Initial Distribution ........................................................... 22

        (b)         Final Distribution ............................................................. 22

        (c)         Disputed Claims................................................................ 22

        (d)         Distribution Addresses; Undeliverable Interim Distributions ................. 23

        (e)         Unclaimed Interim Distributions ..................................... 24

        (f)         Unclaimed Final Distributions ......................................... 24

        (g)         Post-Effective Date Distributions ..................................... 24

i

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

        (h)    Fractional and *de minimis* Amounts ....................................................... 24

Section 3.5    Executory Contracts and Unexpired Leases ................................ 25

Section 3.6    Avoidance Actions.......................................................................... 26

**ARTICLE 4. MISCELLANEOUS PROVISIONS OF PLAN**............................................... 26

Section 4.1    Conditions to Effectiveness .......................................................... 26

Section 4.2    Effectuating Documents; Further Transactions; Timing ......................... 28

Section 4.3    Exemption from Transfer Taxes .................................................... 28

Section 4.4    Binding Effect ................................................................................ 28

Section 4.5    Governing Law ............................................................................... 28

Section 4.6    Setoffs ............................................................................................ 29

Section 4.7    Severability .................................................................................... 29

Section 4.8    Withholding and Reporting Requirements .................................... 30

Section 4.9    Estate Causes of Action ................................................................. 30

Section 4.10   OUST Fees and Reports.................................................................. 30

Section 4.11   Issuance of New Securities ............................................................ 31

Section 4.12   Committee Disbanded.................................................................... 31

**ARTICLE 5. EFFECT OF CONFIRMATION OF THE PLAN** .......................................... 31

Section 5.1    Discharge ....................................................................................... 31

Section 5.2    Revesting of Property in Reorganized QL2; Injunction; Release............. 31

Section 5.3    Jurisdiction.................................................................................... 33

Section 5.4    Modification of the Plan ................................................................ 33

Section 5.5    Post-Confirmation Status Report .................................................. 33

Section 5.6    Final Decree .................................................................................. 34

ii

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

Debtor and debtor in possession QL2 Software, Inc. ("***Debtor***") and Copernicus Holdings LLC, an investment vehicle of DMEP Corporation d/b/a Hale Global ("***Sponsor***" and, with Debtor, "***Proponents***") hereby submit this First Amended Joint Plan of Reorganization dated as of July 2, 2010 (along with exhibits, schedules, amendments, modifications, and supplements, the "***Plan***").

## INTRODUCTION

On January 11, 2010 (the "***Petition Date***"), Debtor commenced this bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code. Chapter 11 allows the Debtor, and under some circumstances creditors and other parties in interest, to propose a plan of reorganization. Such a plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. This is the Plan as proposed by the Proponents (i.e., Debtor QL2 Software, Inc., and Sponsor). Sent to you in the same envelope as this document is the Disclosure Statement Accompanying Joint Chapter 11 Plan of Reorganization, which has been prepared by Debtor and approved by the Court, and which is provided to help you understand the Plan (the "***Disclosure Statement***").

A more complete description of Debtor's business and the reasons behind the bankruptcy filing may be found in the Disclosure Statement.

## ARTICLE 1.
### DEFINITIONS AND RULES OF INTERPRETATION

**Section 1.1**   **Definitions**

In addition to such other terms as are defined in other sections of the Plan and the Disclosure Statement, the following terms (which appear in the Plan and the Disclosure Statement as capitalized terms) have the following meaning as used in the Plan and Disclosure Statement:

1

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

"***Administrative Bar Date***" means the date to be established by the Bankruptcy Court as the last date to file Administrative Claims.

"***Administrative Claim***" means a Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating Debtor's business (such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

"***Allowed Amount***" means the amount of any Claim that becomes an Allowed Claim.

"***Allowed Claim***" or "***Allowed _____ Claim***" or "***Allowed Interest***" means a Claim or Interest against Debtor (in the particular category as appropriate) to the extent that:

(a)(i) a proof of claim or interest was timely filed with the Bankruptcy Court on or prior to the Bar Date or Administrative Bar Date, as applicable; or (ii) is deemed timely filed under applicable law or by reason of an order of the Bankruptcy Court; and

(b)(i) Debtor or Reorganized QL2 (or, if permitted under applicable law, another party in interest) does not file an objection within a time fixed by the Bankruptcy Court and the Claim is not otherwise a Disputed Claim (but only to the extent that such Claim is not a Disputed Claim); (ii) the Claim or Interest is allowed (and only to the extent allowed) by a Final Order; or (iii) the Claim or Interest is allowed under the Plan.

"***Avoidance Action***" means any action brought under Sections 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, and any comparable provision of applicable state law.

2

FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

"***Bankruptcy Code***" or "***Code***" means Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as now in effect or hereafter amended. All citations in the Plan to section numbers are to the Code unless otherwise expressly indicated.

"***Bankruptcy Court***" or "***Court***" means the United States Bankruptcy Court for the Western District of Washington, Seattle Division, or, if such court ceases to exercise jurisdiction over the Chapter 11 Case, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of such court.

"***Bankruptcy Rules***" *or* "***Rules***" means, collectively (a) the Federal Rules of Bankruptcy Procedure and (b) the Local Bankruptcy Rules for the Bankruptcy Court, as now in effect or hereafter amended.

"***Bar Date***" means May 28, 2010, as established by the Bankruptcy Court pursuant to Order Waiving Case Management Conference and Setting Deadlines entered by the Bankruptcy Court on January 29, 2010;

"***Borcich***" is defined in Plan Section 2.2(g).

"***Business Day***" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"***Chapter 11 Case***" means the within Chapter 11 proceeding known as Case No. 10-10209, pending before the Bankruptcy Court.

"***Claim***" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured; or, a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, matured, disputed, undisputed, secured or unsecured.

3

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

"*Class*" means any grouping into which Allowed Claims and Interests are classified pursuant to Article 2 of the Plan.

"*Committee*" means the Official Committee of Unsecured Creditors appointed in the Case by the United States Trustee.

"*Conditions to Effectiveness*" is defined in Plan Section 4.1.

"*Confirmation*" means the entry by the Bankruptcy Court of the Confirmation Order.

"*Confirmation Date*" means the date upon which Confirmation occurs.

"*Confirmation Hearing*" means the hearing held before the Court respecting Confirmation of the Plan.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code.

"*Creditor*" means a person or entity holding an Allowed Claim.

"*Debtor*" is defined in the Preamble to this Plan.

"*DIP Facility*" means the debtor-in-possession financing facility provided by Sponsor provided pursuant to that certain Debtor in Possession Loan and Security Agreement pursuant to which Sponsor has agreed to provide up to $500,000 of term loans or other credit support.

"*Disclosure Statement*" is defined in the Introduction to this Plan.

"*Disputed Claim*" means a Claim (a) which is scheduled as disputed, contingent, or unliquidated, or (b) as to which a proof of claim has been filed or deemed filed under applicable law, as to which an objection has been or may be timely filed by Debtor or other party in interest and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. The term Disputed Claim also includes any Claim that Reorganized QL2 believes may be appropriately objected to, whether or not such objection has yet been filed, so long as the objection period set forth in Plan Section 3.4(c) has not expired. For the avoidance

4

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

of doubt, for purposes of objections to Claims Sponsor shall be a party in interest with standing and ability to object to any Claim it deems objectionable.

"***Distribution***" means a distribution of money or property by Reorganized QL2 to Creditors in accordance with this Plan.

"***Effective Date***" means the first Business Day which is more than fourteen (14) days after the Confirmation Date, provided that (a) there is no appeal pending from the Confirmation Order or, if an appeal has been filed, there is no stay pending appeal then in effect, and (b) that all Conditions to Effectiveness have been satisfied or waived by Proponents.

"***Estate***" means the estate created in the Chapter 11 Case for the Debtor under Section 541 of the Bankruptcy Code.

"***Final Decree***" means an order closing the Chapter 11 Case entered in accordance with Rule 3022.

"***Final Distribution***" means the last contemplated Distribution to be made by Reorganized QL2 to General Unsecured Creditors in accordance with the Plan, as described in Plan Section 3.4(b).

"***Final Order***" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the Court's docket, which has not been reversed, stayed, modified or amended, and as to which (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal that has been or may be taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

"***General Unsecured Claims***" means the amounts of those Claims against the Debtor for which there are no assets of the Debtor serving as security, but not including any Priority Claims.

"***General Unsecured Creditors***" means Creditors holding Allowed General Unsecured Claims.

5

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

"*Initial Distribution*" means the first Distributions to be made by Reorganized QL2 to General Unsecured Creditors and others at or as soon as practicable after the Effective Date pursuant to Plan Section 3.4(a).

"*Interest*" means an equity interest in Debtor. Debtor has two classes of stock outstanding, Old Common and Old Preferred.

"*Interest Holder*" means the holder of an Allowed Interest in Debtor.

"*Interim Distribution*" means all Distributions other than the Final Distribution, including the Initial Distribution.

"*Liquidation Preference*" is defined in Plan Section 2.02(h).

"*New Common*" means the common units in Reorganized QL2 to be issued to Sponsor pursuant to Plan Section 2.2(a).

"*New Common Unitholders*" means the holders of units of New Common.

"*New Preferred*" means the preferred units in Reorganized QL2 to be issued to Old Common Shareholders on the Effective Date.

"*New Preferred Unitholders*" means the holders of units of New Preferred.

"*Old Common Shareholders*" means the holders of shares of Old Common immediately prior to the Effective Date.

"*Old Common*" means the shares of common stock in Debtor immediately prior to the effective date.

"*Old Preferred Shareholders*" means the holders of shares of Old Preferred Shares immediately prior to the Effective Date.

"*Old Preferred Shares*" means the Series A Preferred Stock existing immediately prior to the Effective Date.

"*Order*" means an order or judgment of the Bankruptcy Court as entered on its docket.

"*Original Preferred Face Amount*" is defined in Plan Section 2.2(h).

6

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

"**Petition Date**" is January 11, 2010.

"**Plan**" is defined in the Preamble to this document.

"**Plan Documents**" means this Plan, the Disclosure Statement, and all documents executed and delivered by Proponents in connection therewith, including any exhibits, schedules, amendments, modifications, and supplements thereto.

"**Plan Rate**" means twelve percent (12.0%) per annum or, if applicable, the contract rate.

"**Plan Supplement**" means the pleading to be filed by Debtor no later than twenty-one calendar days prior to the date votes on the Plan are due, including such ancillary documents such as forms of deeds of trust, promissory notes, loan agreements, and other such instruments described in this Plan, in the Disclosure Statement, or otherwise as Proponents may determine are appropriate.

"**Priority Claim**" means a Claim which, if allowed, would be entitled to priority pursuant to Sections 507(a)(2), (3), (4), (5), or (7) of the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim which, if allowed, would be entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"**Professional Fees**" means fees and costs incurred by professionals employed by the Estate (attorneys, accountants, real estate brokers, and others) pursuant to Orders of the Bankruptcy Court ("**Professionals**").

"**Proponents**" is defined in the Preamble to this Plan.

"**Rejection Claim**" means an Allowed Claim for damages arising under Section 502(g) of the Bankruptcy Code solely as the result of the rejection of an executory contract or unexpired lease. The term Rejection Claim does not include any other claims or interests of the holder of such Allowed Claim, including without limitation any claims existing as of the Petition Date and any Administrative Claims.

7

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

"**_Reorganized QL2_**" means Debtor on and after the Effective Date. As described in Plan Section 3.1, at the Effective Date Debtor will merge into a new Delaware limited liability company and the merged entity will be for all purposes of this Plan Reorganized QL2.

"**_Secured Claim_**" means a Claim which, if allowed in the priority scheduled by the Debtor or asserted by the claimant, would be secured by a lien, security interest or other charge against the property in which the Estate has an interest, or which is subject to set-off under Section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with Section 506(a) of the Bankruptcy Code, of the interest of the holder of such secured Claim in the Estate's interest in such property, or to the extent of the amount subject to any set-off, as the case may be.

"**_Sponsor_**" is defined in the Preamble to this Plan.

"**_Sponsor Equity Contribution_**" means the cash equity contribution in the amount of $2,000,000 to be made by Sponsor to Reorganized QL2 pursuant to this Plan. The total of the Sponsor Equity Contribution and the Sponsor Exit Facility shall not exceed $4,000,000, including any credit issued and outstanding under the DIP Facility.

"**_Sponsor Exit Facility_**" means the amount of up to $2,000,000 to be loaned by Sponsor to Reorganized QL2 pursuant to that certain Loan and Security Agreement to be dated as of the Effective Date, including credit issued and outstanding under the DIP Facility as of the Effective Date. Such amount may be increased up to an additional $1,000,000 at the discretion of the Reorganized QL2 Board of Managers. All amounts loaned under the Sponsor Exit Facility shall be secured by essentially all assets of Reorganized QL2 as provided in the Loan and Security Agreement. Such security shall be a first priority security interest subject only to the rights, if any, of the holder(s) of Class 2 Claims and Class 3 Claims pending payment of such Allowed Claims. The total of the Sponsor Equity Contribution and the Sponsor Exit Facility shall not exceed $4,000,000, including any credit issued and outstanding under the DIP Facility. Sponsor

8

FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

72967-0001/LEGAL18664537.1

will be entitled to a loan fee on account of the Sponsor Exit Facility of $100,000, less any loan fees paid on account of the DIP Facility, plus reimbursement of expenses incurred in connection with the financing.

*"Tumelsons"* means the Tumelson Family Limited Partnership, Katie Taylor and Kelly Tumelson.

*"Tumelson Adversary Proceeding"* means Adversary Proceeding No. 10-01028-KAO pending before the Bankruptcy Court.

*"Tumelson Secured Claim"* has the meaning set forth in Plan Section 2.2(b).

**Section 1.2    Other Defined Terms.**

Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**Section 1.3    Rules of Interpretation.**

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any references in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation

9

72967-0001/LEGAL18664537.1

of the Plan; and (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

### Section 1.4    Time Periods.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE 2.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### Section 2.1    Treatment of Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan, because they are automatically entitled to specific treatment provided for them in the Code. As such, Proponents have not placed the following claims in a class:

**(a)    Administrative Claims**

Administrative Claims are claims for the expenses of administering the Debtor's Chapter 11 Case that are allowed under Bankruptcy Code Section 507(a)(l). The Code requires that all Administrative Claims be paid on the Effective Date of the Plan, unless a particular Creditor agrees in writing to a different treatment. With the exception of certain Professional Fees incurred to date and certain Disputed Administrative Claims, Debtor has paid all known Administrative Claims. Accordingly, Proponents believe that no significant arrearage other than Professional Fees will be owed on account of Administrative Claims at the Effective Date. A list of unpaid Administrative Claims will be provided to the Bankruptcy Court at or prior to the Confirmation Hearing. To the extent any Allowed Administrative Claim other than for Professional Fees is incurred and remains unpaid on the Effective Date or arises after the Effective Date, such claim will be paid in accordance with the terms and conditions of the particular transaction and agreements relating thereto. If Debtor or Reorganized QL2 disputes an

10

FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

asserted Administrative Claim, such Claim will be paid within ten (10) Business Days after the Claim becomes an Allowed Claim by Final Order.

Professional Fees are subject to certain requirements imposed by the Code. Such fees and costs can only be paid pursuant to an order of the Court, after notice and hearing. Debtor will request a hearing before the Court as soon as practicable after the Effective Date on final fee applications to be filed by all Professionals, covering all Professional Fees incurred prior to the Confirmation Date.

Any Professional retained by Debtor prior to the Effective Date may continue to provide services to Reorganized QL2 from and after the Confirmation Date, and any additional Professionals may be retained by the Reorganized QL2 after the Confirmation Date without approval of the Court. All Professional Fees for services rendered after the Confirmation Date at the request or authorization of Reorganized QL2, whether or not rendered in connection with consummation or implementation of the Plan, are to be paid by Reorganized QL2 upon receipt of an invoice for such services, or on such other terms to which Reorganized QL2 may agree, without the need for further Bankruptcy Court authorization. If Reorganized QL2 and any Professional cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to such Professional, such amount shall be determined in accordance with applicable nonbankruptcy law.

Reorganized QL2 will be responsible for payment of all United States Trustee quarterly fees. The post-confirmation United States Trustee quarterly fees will be paid from Reorganized QL2's post-Confirmation assets and will be calculated based on disbursements made on Allowed Claims pursuant to the Plan.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

**(b)    Priority Tax Claims**

Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of a Priority Tax Claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the Petition Date.

Unless the holder of an Allowed Priority Tax Claim agrees to a different treatment, regular payments will be made sufficient to fully amortize each Allowed Priority Tax Claim over a period of five (5) years from the Petition Date. The outstanding and unpaid amount of each Allowed Priority Tax Claim will bear interest, commencing on the Effective Date and continuing until such Allowed Priority Tax Claim is paid in full, at the lesser of the following rates: (i) the interest rate available on ninety-day United States Treasuries on the Effective Date; or (ii) the rate specified by Section 6621(a) of the Internal Revenue Code on the Effective Date.

Payment of any Priority Tax Claim will commence on the later of (a) the first day of the first calendar quarter following the Effective Date, or (b) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Tax Claim. Such payments will continue on the first day of each calendar quarter thereafter, in accordance with the provisions of this Section. Reorganized QL2 shall be entitled to pay the Allowed Priority Tax Claims, or any lesser amount agreed upon by the Creditor, earlier than as set forth above without penalty.

**Section 2.2    Classified Claims and Interests**

The claims of Creditors and Interest Holders are divided by this Plan into eight separate classes based upon their particular legal characteristics. The treatment provided to each class is summarized in the following subparagraphs.

**(a)    Class 1 (Sponsor)**

Sponsor is the sole member of Class 1. Sponsor is the lender under the DIP Facility and is providing the Sponsor Exit Facility and the Sponsor Equity Contribution upon the occurrence of the Effective Date.

12

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

**Treatment**.  At the Effective Date, Sponsor shall receive 100% of the units of New Common plus its rights pursuant to the Sponsor Exit Facility.

**Impaired**.  Class 1 is impaired.  As Sponsor is the sole member of Class 1 and is a Proponent of the Plan, Class 1 is conclusively deemed to vote in favor of the Plan.

Sponsor also is an Old Common Shareholder and will be treated as a member of Class 8 with respect to its shares of Old Common.

**(b)     Class 2 (Tumelsons)**

The Tumelsons are the sole members of Class 2.  The Tumelsons have asserted a Secured Claim in the amount of $907,228.49 as of May 15, 2010 and assert that the Claim is secured by the collateral identified in that certain Settlement and Release Agreement dated November 16, 2009 between the Tumelsons and the Company including without limitation the accounts receivable of the Company and Patent No. 7418440 (the "***Tumelson Secured Claim***").  As set forth in the Disclosure Statement, Debtor has been engaged in litigation regarding the validity and priority of the Tumelson Secured Claim.  Proponents intend to resolve the disputes regarding the Tumelson Secured Claim pursuant to the terms of this Plan.

**Treatment.**  As of the Effective Date, in full satisfaction of the Tumelson Secured Claim, and any other claims the Tumelsons may have against Debtor, the Tumelsons will receive: (a) cash in the amount of $650,000; and (b) the 750,000 shares of Old Common currently held in escrow, which shall be Allowed Interests.  The Tumelsons will be Old Common Shareholders and will be treated as a member of Class 8 with respect to the 750,000 shares of Old Common.

**Impaired**.  Class 2 is impaired and is entitled to vote on acceptance or rejection of the Plan.

As described in the Disclosure Statement, pursuant to a separate agreement between the Tumelsons and Sponsor, immediately after the Effective Date the Tumelsons will sell the 750,000 shares of Old Common, or the units of New Preferred to be provided to Tumelsons as

13

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

members of Class 8, to Sponsor for $225,000. Thereafter, Sponsor will be the owner of the 750,000 shares of Old Common or the units of New Preferred, as applicable. Confirmation shall (i) constitute a release, effective as of the Effective Date, of any claims, causes of action, or rights of any nature whatsoever Debtor, Reorganized QL2, or the Estate may have, against the Tumelsons, and their partners, employees, agents, shareholders, members, managers, trustees, representatives, parents, subsidiaries, successors, assigns, affiliates, related entities, nominees and attorneys, acting individually and in their representative capacity on behalf of the Tumelsons, of and from any and all claims, demands, liabilities or actions of any nature whatsoever (the "***Released Tumelson Claims***"), whether such Released Tumelson Claims, arising before the Effective Date, are known or unknown, or arise under state or federal law, including without limitation any claims relating in any way to the prior litigation between Tumelsons and Debtor and any Avoidance Actions, except those claims arising under or concerning the Plan and its enforcement, (ii) effect the dismissal with prejudice of the Tumelson Adversary Proceeding (as defined in the Disclosure Statement) as of the Effective Date, and (iii) entitle the Tumelsons to keep all prior payments of any kind made by the Debtor with regard to the Tumelson Secured Claim or the Tumelsons' claims against any other party.

**(c)     Class 3 (Graham & Dunn)**

Graham & Dunn PC is the sole member of Class 3. Graham & Dunn PC has asserted a Secured Claim in the amount of approximately $600,000 against Debtor and asserts that its Claim is secured by essentially all of Debtor's assets. Debtor and/or Reorganized QL2 may dispute some or all of the Class 3 Claim.

**Treatment**. At the Effective Date, or within ten (10) Business Days after the Class 3 Claim becomes an Allowed Claim pursuant to a Final Order, whichever is later, the holder of the Class 3 Claim will receive cash in the full amount of the Allowed Claim along with interest from

14

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

the Petition Date at the Plan Rate. Pending such allowance and payment, the holder of the Class 3 Claim shall retain all security interests it may have in Debtor's and Reorganized QL2's assets.

**Unimpaired**. Class 3 is unimpaired and is not entitled to vote on the Plan.

(d) **Class 4 (Other Secured Claims)**

To the extent there are any other Creditors who hold Allowed Secured Claims against Debtor and are not members of Class 1, Class 2 or Class 3, such other Secured Creditors are members of Class 4.

**Treatment**. Each such Allowed Secured Claim will be paid in accordance with its respective terms or as otherwise agreed to between Reorganized QL2 and such Creditor. To the extent there are any defaults in payment of such Allowed Secured Claims, such defaults will be cured by payment in full of any such delinquent amounts at the earlier of the Effective Date and ten (10) Business Days after such Claim becomes an Allowed Claim pursuant to a Final Order, whichever is later.

**Unimpaired**. Class 4 is unimpaired and is not entitled to vote on the Plan.

(e) **Class 5 (Allowed Priority Claims)**

Class 5 consists of holders of Allowed Priority Claims. The Code requires that each holder of an Allowed Priority Claim receive cash on the Effective Date equal to the Allowed Amount of such claim.

**Treatment**. Allowed Priority Claims will be paid in full in cash on the Effective Date or within ten (10) Business Days after such Claim becomes an Allowed Claim by Final Order, whichever is later.

**Unimpaired**. Class 5 is unimpaired and is not entitled to vote on the Plan.

(f) **Class 6 (Allowed General Unsecured Claims)**

Class 6 consists of Allowed General Unsecured Claims.

15

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

**Treatment**. Each Allowed General Unsecured Claim shall be paid in full in cash on the Effective Date or within ten (10) Business Days after such Claim becomes an Allowed Claim by Final Order, whichever is later, together with interest at the Plan Rate from the Petition Date to the date of payment.

**Unimpaired**. Class 6 is unimpaired and is not entitled to vote on the Plan.

(g)     **Class 7 (Old Preferred Shareholders)**

To Debtor's knowledge there is only one Old Preferred Shareholder and thus only one member of Class 7, Vincent Borcich (*"Borcich"*), a former member of the board of directors of Debtor. Borcich appears to have invested $400,000 in Debtor. Borcich appears to have received a stock certificate evidencing ownership of 500,000 shares of Old Preferred. Debtor has objected Borcich's claims and interests on various grounds, including the invalidity of the corporate actions and approvals leading to the issuance of the Borcich stock certificate and Borcich's liability to Debtor for misconduct prior to the commencement of the Chapter 11 Case.

By one reading of the terms of the Old Preferred, which are disputed, Borcich as an Old Preferred Shareholder is entitled to a liquidation preference of $400,000 plus certain accrued but unpaid dividends and conversion rights. Debtor understands Borcich contends the total amount due is approximately $415,000. In addition, by one disputed reading of the terms of the Old Preferred Borcich may exercise conversion rights and the Old Preferred shares would be converted to up to 800,000 shares of Old Common.

Borcich is also an Old Common Shareholder and, subject to the Debtor's objections, is a member of Class 8 as well.

**Treatment**. Borcich as a member of Class 7 will, if and to the extent his interests are Allowed, receive the treatment provided for in the Debtor's Articles of Incorporation and related documents, namely payment of the liquidation preference and/or, if he exercises his conversion

16
FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

rights, will obtain shares of Old Common and will be treated as a member of Class 8 in accordance with the provisions set forth below.

**Unimpaired**. Class 7 is unimpaired and is not entitled to vote on acceptance or rejection of the Plan.

However, because an Old Preferred Shareholder may exercise his conversion rights and become an Old Common Shareholder, in that capacity his rights will arguably be impaired as set forth in the next succeeding section. Debtor is therefore as a matter of prudence soliciting votes from Class 7 but does not believe those votes should be considered unless the Class 7 member has actually exercised his conversion rights, in which case the votes, if Allowed, will be considered as Class 8 votes.

**(h)     Class 8 (Old Common Shareholders)**

Class 8 (Old Common Shareholders) consists of the holders of Old Common with Allowed Interests. Debtor's records indicate that at the Petition Date there were approximately 97 Old Common Shareholders holding a total of approximately 3,100,000 Old Common shares. Since the Petition Date a number of shares of Old Common have changed hands. Certain of the Old Common Shareholders appear to have received their Old Common for no or inadequate consideration. Those claims and interests have been or will be the subject of objections from the Debtor.

**Treatment**. Each Old Common Shareholder will receive, in full satisfaction of its shares of Old Common a pro rata share (based on the number of shares of Allowed Old Common held by such Old Common Shareholder) of 100% of the New Preferred units with an aggregate face amount of $1.0 million (the "*Original Preferred Face Amount*").

17
FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

The New Preferred shall have the following attributes:

- Dividend of 5.0%, payable annually on anniversaries of the Effective Date

- Declared but unpaid dividends shall be non-cumulative and paid annually at the dividend rate. No dividends may be paid by Reorganized QL2 on its common equity unless all dividends and redemption payments relating to the New Preferred are current.

- In the event of any liquidation or winding-up of the Company, holders of New Preferred shall be entitled to receive, in preference to holders of Common Units, an amount equal to their pro rata portions of the Original Preferred Face Amount plus any declared but unpaid dividends (senior in priority upon liquidation or deemed liquidation to all common equity of Reorganized QL2) (the "*Liquidation Preference*"). For these purposes, "deemed liquidation" means a change in control or sale of all or substantially all of the assets of QL2 and subsidiaries. In addition, for these purposes prior to a judgment in the Borcich litigation described above the Liquidation Preference will be computed on the basis of the approximately 3.1 million (non-Borcich) Old Common shares. If a judgment in the Borcich litigation results in any Old Common or New Preferred shares being issued to Borcich, the Liquidation Preference will thereafter be computed including those Borcich shares.

- Holders of New Preferred shall be entitled to require the Company to redeem such units at any time before the fifth anniversary of the Effective Date, at a price equal to the Liquidation Preference.

18

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

- The New Preferred is also subject, at the sole option of Reorganized QL2, to mandatory redemption at any time prior to the fifth anniversary of the Effective Date for a redemption price equal to three times the Liquidation Preference.

- Any New Preferred that is not redeemed (either by the Holder or by the Company pursuant to above provisions) prior to the fifth anniversary of the Effective Date shall at that time automatically convert to a pro rata share of 20% of the New Common (adjusted for any prior redemptions and for issuances of other units after the Effective Date).

- The New Preferred shall contain certain protective voting provisions as set forth in Plan Section 3.1.

- Each of the New Preferred Unitholders shall grant a right of first refusal with respect to any sale or transfer of units by such holder first, to the Company, second, to the remaining New Preferred Unitholders pro rata in accordance with their respective percentages of the outstanding New Preferred; and third, if the rights of first refusal are not exercised in whole, to Sponsor.

All such attributes shall be specifically set forth in the Reorganized QL2 LLC Agreement to be filed with the Plan Supplement.

**Impaired**. Class 8 is impaired and is entitled to vote on acceptance or rejection of the Plan.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

# ARTICLE 3.
## MEANS OF EFFECTUATING THE PLAN

**<u>Section 3.1</u>     Postconfirmation Ownership and Management**

At the Effective Date, QL2 will merge into a newly formed Delaware limited liability company (or another form of entity to be determined) to be formed by Sponsor. The resulting entity will be for all purposes of this Plan referred to as "Reorganized QL2."

From and after the Effective Date, Reorganized QL2 will be owned as follows: (a) Sponsor will own 100% of New Common and (b) Allowed Old Common Shareholders will own 100% of New Preferred on a pro rata basis.

Reorganized QL2 will be a manager managed limited liability company, governed by a Board of Managers with power to control all operations and activities of Reorganized QL2. The Board of Managers may obtain the assistance of officers and other agents to be selected by the Board of Managers and who will serve at the pleasure of the Board of Managers. The initial members of the Board of Managers and initial executive officers will be identified in the Plan Supplement.

Absent a default in payment of any dividends or mandatory redemptions to or on account of New Preferred, there will be three Managers. Upon a default in payment of any dividends or mandatory redemptions to or on account of New Preferred while at least 50% of the original New Preferred remains outstanding, the holders of New Preferred will have the right to designate two additional Managers; and upon a default in payment of any dividends or mandatory redemptions to or on account of New Preferred while at least 25% but less than 50% of the original New Preferred remains outstanding, the holders of New Preferred will have the right to designate one additional Manager.

The Board of Managers will act by majority vote for ordinary course operations, but certain fundamental transactions such as secured financing and sale of all or substantially all of the assets of Reorganized QL2 will require a unanimous decision of all Managers then in office.

20

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

All of such fundamental transactions and other provisions will be specified in Reorganized QL2's Limited Liability Company Agreement to be filed with the Plan Supplement (the "***Reorganized QL2 LLC Agreement***").

Reorganized QL2 will not be authorized to amend its Limited Liability Company Agreement in a manner that adversely affects the rights of the New Preferred or issue any equity security which is senior to New Preferred as to dividend rights, redemption rights, liquidation preference or similar rights without the approval of a majority of the outstanding units of New Preferred. In addition, so long as at least 50% of the initially issued New Preferred remains outstanding, Reorganized QL2 may not within the first five years after the Effective Date consummate any transaction in which Reorganized QL2 effects a change of control or sale of all or substantially of its assets unless the transaction results in proceeds to the New Preferred of at least the Liquidation Preference then payable to the New Preferred Unitholders.

### Section 3.2    Funding for the Plan

The Plan will be funded by cash on hand at the Effective Date, income from operations, the Sponsor Exit Facility, and the Sponsor Equity Contribution.

### Section 3.3    Operations

From and after the Effective Date, Reorganized QL2 will operate its business under the direction of Reorganized QL2's Board of Managers, continuing the business operated by Debtor with such modifications, extensions, additions, and other changes as the members of the Board of Managers may determine in their business judgment, including without limitation obtaining additional equity or debt financing without the need for approval of the Bankruptcy Court or any other person except as specifically provided in the Reorganized QL2 LLC Agreement.

### Section 3.4    Distributions

Reorganized QL2 will make the following Distributions:

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

**(a)     Initial Distribution**

On or as soon as practicable after the Effective Date, Reorganized QL2 will make the payments described herein to holders of all Allowed Claims to the extent those payments are due on or soon after the Effective Date.

Debtor will file with the Plan Supplement a schedule of all Claims Debtor believes should be Allowed at the Effective Date without further proceedings.

**(b)     Final Distribution**

Reorganized QL2 will make a Final Distribution when all Disputed Claims have been adjudicated.

**(c)     Disputed Claims**

Reorganized QL2 will implement the following procedures with respect to the distributions to the holders of Disputed Claims that become Allowed Claims:

(i)     No property will be distributed under this Plan on account of any Disputed Claim or portion thereof, unless and until such Disputed Claim becomes an Allowed Claim.

(ii)     Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise expressly provided for below, from and after the Effective Date Reorganized QL2 will have the exclusive right (except as to applications for allowances of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code) to make and file objections to Claims and will serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than one hundred and twenty (120) days after the Effective Date.  Any Claims that are not objected to within such 120 day period shall be deemed Allowed and will be paid within ten days of expiration of such period without further order of the Bankruptcy Court.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

(iii)     Nothing in the Plan shall preclude Reorganized QL2 from filing appropriate pleadings before the Bankruptcy Court requesting that certain Disputed Claims be estimated pursuant to Code Section 502(c) for the purposes of Distributions. If the Bankruptcy Court estimates any such Disputed Claims for purposes of Distributions, the amounts so fixed or liquidated will be deemed to be Allowed Claims pursuant to Section 502(c) of the Bankruptcy Code for purposes of Distribution under this Plan.

(iv)     When a Disputed Claim becomes an Allowed Claim, there will be distributed to the holder of such Allowed Claim, no later than ten (10) Business Days after the Order allowing such Claim becomes a Final Order, cash equal to amount of the Allowed Claim.

(v)     No holder of a Disputed Claim will have any Claim against Reorganized Debtor or its assets until such Disputed Claim becomes an Allowed Claim.

(vi)     Any Disputed Claim may be resolved consensually by means of a stipulation between the claimant and Reorganized QL2. Such stipulation shall be filed with the Court and may in the discretion of Reorganized QL2 be presented to the Court for approval and entry as appropriate, but such approval shall not be a condition to effectiveness of such stipulation.

**(d)     Distribution Addresses; Undeliverable Interim Distributions**

All Distributions under this Plan are to be made by Reorganized QL2 to the holder of each Allowed Claim at the address of such holder as scheduled, latest proof of claim or interest filed by such holder, or as otherwise directed in writing by such holder of an Allowed Claim (as the case may be). If any holder's Distribution is returned as undeliverable, no further Distributions to such holder will be made unless and until Reorganized QL2 is notified of such holder's then current address, at which time all required Distributions will be made to such

23

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

holder. Except as set forth in the succeeding sections, undeliverable Distributions will be held by Reorganized QL2 until such Distributions are claimed.

**(e)     Unclaimed Interim Distributions**

In the event that at the time Reorganized QL2 is preparing the Final Distribution there are any Distributions that have not been claimed, whether for failure to cash checks, return of checks for undeliverable addresses, or any other reason, all such unclaimed distributions will revert to Reorganized QL2 as if such Claim were never an Allowed Claim. The Claim of any holder or successor to such holder with respect to such unclaimed Distribution, as well as any Claim of such holder or successor on account of the Final Distribution, will be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

**(f)     Unclaimed Final Distributions**

If there are any checks for Final Distributions that have been returned as undeliverable, or if any checks for Final Distributions remain uncashed at that time, all such unclaimed or uncashed checks will be null and void. The Claim of any holder or successor to such holder with respect to such Final Distribution will be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary. All unclaimed and uncashed funds remaining 120 days after the Final Distribution will revert to Reorganized QL2.

**(g)     Post-Effective Date Distributions**

Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, will be deemed to have been made on the Effective Date.

**(h)     Fractional and *de minimis* Amounts**

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under this Plan would

24

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

Notwithstanding anything contained herein to the contrary, no payment of less than $100.00 will be made. Whenever a payment of less than $100.00 would otherwise be made in any Interim Distribution, that amount will be retained by Reorganized QL2 pending the Final Distribution. Whenever a payment of less than $50.00 would otherwise be made in the Final Distribution, it will be removed from consideration of payments and such moneys will be retained by Reorganized QL2.

### Section 3.5    Executory Contracts and Unexpired Leases

Entry of the Confirmation Order will constitute Bankruptcy Court approval of Debtor's assumption, effective as of the Effective Date, of the executory contracts and unexpired leases set forth in a schedule to be filed as part of the Plan Supplement (the "*Assumed Contracts*"). Assumption of any customer executory contract shall include assumption of the associated liability for deferred revenue relating to such customer resulting from unearned prepayments received by the Company, estimated with other assumed liabilities to total at least $4 million. The Plan Supplement will contain a proposed cure amount for each such Assumed Contract. Any person who disputes Debtor's proposed cure amount shall file a pleading objecting to such proposed cure amount no later than the time objections to confirmation are due. If the parties are unable to resolve the dispute over cure amounts, the dispute will be resolved at the Confirmation Hearing, unless Debtor elects subject to the Bankruptcy Court's approval to have the dispute resolved after the Confirmation Hearing.

Entry of the Confirmation Order will constitute Bankruptcy Court approval of Debtor's rejection, effective as of the Effective Date, of the executory contracts and unexpired leases set forth in a schedule to be filed as part of the Plan Supplement (the "*Rejected Contracts*").

FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

72967-0001/LEGAL18664537.1

To the extent that Debtor is still a party to any other executory contract or unexpired lease on the Confirmation Date that has not yet been assumed or rejected, is not on the schedule of Assumed Contracts or the schedule of Rejected Contracts, and is not then subject to a motion to assume or reject, the Confirmation Order will be deemed to constitute Bankruptcy Court approval of the rejection of any such executory contracts and unexpired leases.

In the event any executory contract or unexpired lease is rejected pursuant to the Plan or otherwise, the last date for filing a proof of claim for damages arising from such rejection shall be thirty (30) days after entry of the Confirmation Order or entry of the order approving such rejection, as applicable.

**Section 3.6    Avoidance Actions**

From and after the Effective Date, Reorganized QL2 shall retain all Avoidance Actions and shall prosecute, settle, abandon, or otherwise control such Avoidance Actions at Reorganized QL2's expense and as Reorganized QL2 may deem appropriate.    Any such Avoidance Actions shall be filed no later than the second anniversary of the Petition Date.    All net proceeds of such Avoidance Actions shall be the property of Reorganized QL2.    Any Avoidance Action with less than $50,000 face amount at stake may be settled without further order of the Bankruptcy Court, provided that nothing precludes Reorganized QL2 or the settling party from requesting such Court approval.

# ARTICLE 4.
## MISCELLANEOUS PROVISIONS OF PLAN

**Section 4.1    Conditions to Effectiveness**

The following are conditions precedent to reaching the Effective Date of the Plan that must be satisfied or waived by Proponents (the "***Conditions to Effectiveness***"):

    a)    The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to Proponents.

26

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

b) The aggregate amount of Professional Fees payable by the Bankruptcy Estate, whether Allowed or subject to further proceedings, shall be no more than $500,000.

c) All actions, documents and agreements necessary to implement the Plan shall have been effected or executed as determined by Proponents in their sole and absolute discretion.

d) The Proponents shall have received any authorizations, consents, regulatory approvals, or other documents or actions that are necessary to implement the Plan and that are required by law, regulation or order, in each case as determined by the Proponents.

e) Reorganized QL2 shall be validly existing and in good standing and the merger contemplated in Plan Section 3.1 shall have been consummated.

f) All documents necessary to implement the Sponsor Exit Facility shall have been executed and delivered by all of the parties thereto, all conditions to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof, and the funding pursuant to the Sponsor Exit Facility shall have occurred.

g) Proponents have determined that there are no material adverse tax consequences to the Debtor or to Reorganized QL2 from the structure proposed in the Plan or, in the alternative, that a nonmaterial modification to the Plan may be accomplished without causing any such material adverse tax consequences.

27

FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

72967-0001/LEGAL18664537.1

**Section 4.2    Effectuating Documents; Further Transactions; Timing**

Debtor and Reorganized QL2 are each authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. All transactions required to occur on the Effective Date under the terms of this Plan will be deemed to have occurred simultaneously.

**Section 4.3    Exemption from Transfer Taxes**

In accordance with Section 1146(a) of the Bankruptcy Code, the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state or local government officials or agents will be directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**Section 4.4    Binding Effect**

This Plan will be binding on, and will inure to the benefit of Debtor, Reorganized QL2, and the holders of all Claims and Equity Interests, and their respective successors and assigns.

**Section 4.5    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any document contained in the Plan, the rights, duties and obligations of Debtor, Reorganized QL2, and any other person arising under this Plan will be governed by, and

28

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

construed and enforced in accordance with, the internal laws of the State of Washington, without giving effect to choice of law provisions.

### Section 4.6    Setoffs

Reorganized QL2 may, but is not required to, set off or recoup against any Claim and the payments or other distributions to be made under this Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that Debtor may have against the holder of such Claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the Allowance of any Claim or Equity Interest under this Plan will constitute a waiver or release by Debtor or Reorganized QL2 of any such claim that it may have against such holder; provided that the foregoing shall be subject to the releases specifically set forth in Plan Section 5.2 (Effect of Confirmation of Plan – Revesting of Property in Reorganized QL2; Injunction; Release). No such setoff, and nothing in this Plan, will be deemed a waiver of any rights Debtor or Reorganized QL2 may have pursuant to Code Section 502(d).

### Section 4.7    Severability

If at any time after Confirmation any provision of this Plan or any Plan Document is found by the Bankruptcy Court to be invalid, illegal or unenforceable, Reorganized QL2 (subject to the approval of the Bankruptcy Court if such approval is required under otherwise applicable law) will retain the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan and the Plan Documents, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

29

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

### Section 4.8    Withholding and Reporting Requirements

In connection with this Plan and all instruments and securities issued in connection with this Plan, Reorganized QL2 will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions under this Plan remain subject to any such withholding and reporting requirements. Reorganized QL2 will be authorized to take all actions necessary to comply with such withholding and recording requirements. Notwithstanding any other provision of this Plan, each Creditor that receives distributions under the Plan will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation on account of such distribution. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

### Section 4.9    Estate Causes of Action

Nothing in this Plan shall constitute a waiver or release of any claim or cause of action belonging to Debtor at the time of Confirmation, except as specifically set forth in Plan Section 5.2 (Effect of Confirmation of Plan – Revesting of Property in Reorganized QL2; Injunction; Release) and Section 2.2(b) (Classified Claims and Interests – Class 2 (Tumelsons)). Any such claim or cause of action will survive Confirmation, will revest in Reorganized QL2, and may be prosecuted, compromised, or abandoned, all in the judgment of Reorganized QL2.

### Section 4.10    OUST Fees and Reports

Reorganized QL2 shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the Chapter 11 Case is closed, converted or dismissed. Reorganized QL2 shall comply with applicable Bankruptcy Rules and Local Rules respecting reporting requirements for such purpose.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

**Section 4.11    Issuance of New Securities**

Reorganized QL2 is a "successor to the debtor under the plan" for purposes of Section 1145 of the Bankruptcy Code.  Issuance of the New Preferred and New Common in connection with the Plan is entitled to all of the exemptions and protections of Code Section 1145 in accordance therewith.

**Section 4.12    Committee Disbanded**

At the Effective Date, the Committee, and all powers of the Committee, shall terminate.

# ARTICLE 5.
## EFFECT OF CONFIRMATION OF THE PLAN

**Section 5.1    Discharge**

Effective as of the Effective Date, the Confirmation Order shall constitute a discharge of Debtor in accordance with Code § 1141(d)(3) from all Claims and Interests, except to the extent any such Claim or Interest is specifically described in this Plan as surviving confirmation, and Reorganized QL2 will have no responsibility therefor except to the extent set forth herein.

**Section 5.2    Revesting of Property in Reorganized QL2; Injunction; Release**

Except as specifically provided elsewhere in the Plan, on the Effective Date of the Plan all assets of the Estate will revest in Reorganized QL2.  The Confirmation Order shall constitute an injunction against all actions relating in any way to Claims or causes of action against Debtor or the Estate arising out of facts and circumstances present at or before the Effective Date, to the same extent as the automatic stay set forth in Bankruptcy Code § 362(a) with respect to property of the Debtor.  Such injunction shall be effective as of the Effective Date.

The Confirmation Order shall constitute a release, effective as of the Effective Date, of any claims, causes of action or rights of any nature whatsoever Debtor, Reorganized QL2, or the Estate may have, known or unknown, liquidated or unliquidated, fixed or contingent, against Sponsor or any of its members, officers, agents and professionals, or against any of Debtor's

31

FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

72967-0001/LEGAL18664537.1

officers, directors and agents in such positions as of the date of filing this Plan, and Professionals employed pursuant to Orders of the Bankruptcy Court, for matters relating to the Chapter 11 Case or otherwise arising after the Petition Date and prior to the Effective Date; provided that such release shall be effective only upon receipt by Reorganized QL2 of a mutual general release, in form and substance reasonably acceptable to Reorganized QL2, releasing and waiving any claim such person has or may have against Debtor or the Estate, or against any of the other persons described above relating in any way to the Debtor or the Estate, for matters arising prior to the Effective Date (with such exceptions as Reorganized QL2 may determine with respect to ordinary course employment claims and timely filed proofs of claim); provided that nothing herein shall require any Professional retained by Debtor with approval of the Bankruptcy Court to release any claims it may otherwise have against the Estate on account of services rendered to the Debtor during the Chapter 11 Case.

The obligations of Debtor to indemnify and/or provide contribution to any person serving as a director, officer, or other agent as of the date of filing this Plan by reason of such person's service in such capacity, to the extent provided in Debtor's constituent documents, by a written agreement with Debtor, or under applicable law, shall be deemed and treated as executory contracts that are assumed by Debtor pursuant to this Plan and Section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations shall survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date.

Neither Debtor nor any of its members, officers, directors, employees, advisors, professionals or agents shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence and, in all respects,

32

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

Debtor and its members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**Section 5.3**     **Jurisdiction**

The Court will, after confirmation, retain jurisdiction to the fullest extent allowed by law and this Plan. Such jurisdiction will include jurisdiction to (i) rule upon all objections to Claims or requests for payment made under Code § 503(a); (ii) interpret and enforce the Court's Orders, the Plan, and all Plan Documents; (iii) hear and determine contested matters and adversary proceedings, including those for declaratory relief relating to taxes or property rights of Debtor, Reorganized QL2 or the Estate arising before the commencement of the Chapter 11 Case or during the administration of the Estate, whether before or after Confirmation and whether brought under Code § 505 or 1146(d) or any other provision of federal or state law; and (iv) hear and determine any disputes relating to defaults or alleged defaults under the Plan; provided, in each such case, that such objections, matters or proceedings are filed no later than the date of the Final Decree, and provided, further, that such jurisdiction will not extend to disputes arising out of Reorganized QL2's business as conducted after the Effective Date.

**Section 5.4**     **Modification of the Plan**

Proponents may modify the Plan at any time before Confirmation, subject to Code Section 1127(c). Proponents may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**Section 5.5**     **Post-Confirmation Status Report**

No later than 120 days after the Effective Date, and every 120 days thereafter until the Final Decree is entered, Reorganized QL2 shall file a status report with the Court describing the Distributions made to date and explaining the progress that has been made toward consummation

33

of the confirmed Plan. The status report shall be served on the United States Trustee and those parties who have requested post-Confirmation special notice.

### Section 5.6  Final Decree

Once the Estate has been fully administered as described in Bankruptcy Rule 3022, Reorganized QL2 shall file in accordance with the Bankruptcy Rules a final account and application for entry of a Final Decree to close the Chapter 11 Case, discharge Reorganized QL2 from any remaining duties hereunder, and include such provisions as may be reasonably necessary in connection with final tax returns and other such matters.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1

Respectfully submitted this 2nd day of July, 2010.

**QL2 SOFTWARE, INC. ("Debtor")**　　　　**COPERNICUS HOLDINGS LLC ("Sponsor")**

By _____/s/_____　　By _____/s/_____
Brian Vincent, Interim Chief Executive Officer　Charles Hale, Manager

**KARR TUTTLE CAMPBELL, a Professional Services Corporation**　　　　**PERKINS COIE LLP**

By _____/s/_____　　By _____/s/_____
Diana K. Carey, WSBA #16239　　　　　　Alan D. Smith, WSBA # 24964
of Karr Tuttle Campbell　　　　　　　　　Brian A. Jennings, WSBA #32509
1201 Third Avenue, 29th floor　　　　　　　of Perkins Coie LLP
Seattle, WA 98101　　　　　　　　　　　　1201 Third Avenue, 40th floor
(206) 223-1313　　　　　　　　　　　　　Seattle, WA 98101
dcarey@karrtuttle.com　　　　　　　　　　(206) 359-8000
　　　　　　　　　　　　　　　　　　　　adsmith@perkinscoie.com
　　　　　　　　　　　　　　　　　　　　bjennings@perkinscoie.com

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION

72967-0001/LEGAL18664537.1